### STATE ex rel. AMERICAN EXP. CO. v. STATE BOARD OF ASSESSMENT AND EQUALIZATION.

1. Under the provisions of the statutes of this state the office of the writ of *certiorari* is confined to questions touching the jurisdiction of inferior courts, officers, boards, and tribunals, and to the question whether such inferior courts, officers, boards, and tribunals have regularly pursued the authority conferred upon them.

2. By chapter 14, Laws 1891, power is conferred upon the state board of assessment and equalization to value and assess the property of express companies within this state; and the duty is imposed upon such state board to so value and assess such express companies' property for the purposes of taxation under the said act.

3. The state board of assessment and equalization being authorized and required, by the statute, to value and assess the property of relator within this state, the valuation and assessment made by such board, when it has jurisdiction of the party and of the subject-matter, and regularly pursues its authority, is, in this proceeding, conclusive upon this court. This court cannot substitute its own judgment for that of such board as to the assessable value of such property.

4. It is only when the valuation and assessment is erroneous in point of law, either because the said state board has adopted some inadmissible basis in making it, or because it has disregarded any of the mandatory provisions of the statute on which the relator has a right to rely, that a court will set aside or modify the proceedings of such board of assessment and equalization on the writ of *certiorari*

5. The taxing power of the state is one of its attributes of sovereignty, and this power reaches all property within the state which is not by law exempt from taxation, and may be exercised at the discretion of the state; and although such property is used in the business of interstate commerce, it is nevertheless assessable in this state when located and used therein.

(Syllabus by the Court.   Opinion filed Oct. 15, 1892.)

*Certiorari* by the state on the relation of the American Express Company to review the proceedings of the state board of equalization and assessment, in assessing the property of relator for taxation for the year 1891.   Proceedings of the board affirmed.

The facts are stated in the opinion.

*Frank F. Davis,* for relator.

A writ of *certiorari* is the proper remedy to invoke in this case.   Section 5507, Comp. Laws.   The supreme court may, under a writ of *certiorari,* consider, review and correct all the proceedings of the state board of assessment and equalization.   Section 5513, Comp. Laws; Milwaukee v. Schubel, 29 Wis. 444; People v. Smith, 45 N. Y. 772; *Id.* v. Board, 39 N. Y. 88; Royce v. Fenney, 59 Iowa, 676; State v. Medical Soc., 35 N. J. L. 205; People v. County Judge, 40 Cal. 479; Edgar v. Greer, 14 Iowa, 211; State v. St. L. C. St., 47 Mo. 595; People v. Board Police, 49 N. Y. 506; *Id.* v. Board Ass'rs, 40 N. Y. 154; *Id.* v. Hillhouse. 1 N. Y. 87; State v. McClurg, 27 N. J. L. 253; Swift v. City, 37 N. Y. 516; People v. Van Alstyne, 32 Barb. 131; Bank v. Supervisor, 25 N. Y. 312; Baldwin v. City, 35 N. Y. 380.

The action of the state board in assessing property is purely of a judicial character, and is subject to review under a writ of *certiorari.*   Clark v. Norton, 49 N. Y. 243; Railroad v. Nolan, 48 N. Y. 513; *Id.* v. Canaan, 16 Barb. 244; Van Rensellear v. Cottrell, 7 Barb. 127; *Id.* v. Whitbeck. *Id.* 133; Barhyte v. Shepard, 35 N. Y. 237; Steele v. Dunham, 26 Wis. 393; State v. Dowling, 50 Mo.

134; Lee v. St L. C. St. 47 Mo. 594; Brown v. Smith, 24 Barb. 419; Hill v. Sellick, 21 Barb. 207; People v. Supervisor, 11 N. Y. 573; Weaver v. Devendorf, 3 Den. 117; Matter of Mt. Harris Square, 2 Hill, 14; People v. Mayor, 5 Barb. 43; *Id* v. Hill, 65 Barb. 170; Bank v. Mayor, 43 N. Y. 186.

Under the writ the court has the power to alter, reduce or annul an erroneous or excessive assessment. People v. Furguson, 38 N. Y. 89. The state board of assessment and equalization is a creature of the statute and must strictly follow and comply with the statutory regulations, any deviation therefrom rendering its acts void. City v. Comis, 3 Allen, 550; Railroad v. Washington, 3 Neb. 30; State v. Board, 5 Nev. 317; State v. Smith, 6 Nev. 95; *Id.* v. Ormsby, 7 Nev. 392; Railroad v. Cass Co., 53 Mo. 17; Mumford v. Turnpike, 42 Ind. 400; Leach v. Bleakley, 34 Vt. 134; Orr v. State Board, 28 Pac. 416.

All questions as to jurisdiction or regularity of the proceedings of the board can only be tried by the record embraced in the return and the stipulated facts. Rue v. Chicago, 66 Ill. 257; Insurance Co. v. Walser, 22 Ind. 74; Pass v. Ellsworth, 49 Me. 418; Camden v. Black, 65 Ala. 239. The record failing to show any evidence that any property had been omitted from the statement of the relator, the inference is that such evidence never did exist, was never submitted to the board, and that it acted arbitrarily without it. Finch v. Tehama, 29 Cal. 454; Plummer v. Waterville, 32 Me. 566; Green v. Perkins, 2 Mich. 238; Rhode v. Davis, 2 Ind. 53; Gaines v. Betts, 2 Doug. 98. If the board exceeded its jurisdiction the court should absolutely set aside the proceedings. Duggen v. McGrudder, 1 Mass. 112; Wildy v. Washburn, 16 Johns. 49; Cooper v. Reynolds, 77 U. S. 316; 19 Cent. Law J. 102; 25 *Id.* 435; People v. City, 21 Barb. 656; *Id.* v. Overseers, 6 How. Pr. 25; Stone v. Mayor, 25 Wend. 157; Case of State Freight Tax, 15 Wall. 232; Wabash v. Illinois, 117 U. S. 557; Leisy v. Harding, 135 U. S. 100; Lyng v. Michigan, *Id.* 161; Crutcher v. Kentucky, 41 *Id.* 47.

*Robert Dollard, Attorney General,* for respondent.

Every presumption is in favor of the action of the board of equalization when the record is silent as to incidental facts. State

v. County, 16 N. W. 617. While a state cannot lay burdens on interstate commerce, it may tax the property used in such commerce. Nathan v. Louisiana, 8 How. 72.

CORSON, J. This is an original proceeding on writ of *certiorari* granted by this court, and directed to the state board of assessment and equalization of this state, commanding said board to certify to this court for review the proceedings of said board in assessing the property of relator for the purposes of taxation for the year 1891. From the affidavit made on behalf of the relator, it appears that the relator is a joint stock association created, organized, and existing under and by virtue of the laws of the state of New York, and is an express company doing business in the state of South Dakota, with agencies and places of business therein, as a common carrier of goods, freight, merchandise, and money for hire; that prior to the 1st day of July, 1891, the relator made and transmitted to the state auditor the statement required by section 65, c. 14, Laws 1891, from which it appears that the value of the real and personal property of relator in this state was $8,956.80, and that said value was by said board fixed at the sum of $35,000, upon which sum a tax was levied for said year; that the value placed upon said property by said relator was its true value, and that the value placed on said property by said board was excessive, unjust, and inequitable, and not in the same ratio as the assessment upon the property of individuals within said state; and that in raising the value of said property to the amount stated the said board exceeded its jurisdiction, and failed to regularly pursue the authority vested in said board. To the writ issued the state board of assessment and equalization made return of its proceedings as such board pertaining to the valuation and assessment of the property of said relator. By such return it appears that the statement required to be made by the relator was made and transmitted to the state auditor; that on August 5, 1891, Mr. Naylor appeared before the board on behalf of the relator in regard to the assessment of the American Express Company, and that on August 10th, on motion of Mr. Taylor, one of the members of the state board of assessment and equalization, the American Express Company was assessed at $35,000. In addition to return

made by the state board the attorney general and the counsel for relator made a stipulation as to certain facts, the material part of which is as follows: "That said board of assessment and equalization, in determining the valuation to be placed upon the property of said American Express Company, took into consideration such contracts of the said American Express Company with said railway lines, and that said board, in arriving at the valuation of said express company's property within said state, took into consideration the gross earnings of said express company under and by virtue of said contracts; and that no further or other testimony or evidence relative to the value of the property of said express company was submitted to or had before said board at its said session than the statement filed with the state auditor pursuant to the provisions of section 65, c. 14, of the General Laws of South Dakota for the year 1891, and the statement before said board of said express company's probable net earnings in South Dakota made by its agent."

A state board of assessment and equalization is provided for by section 45, c. 14, Laws 1891, which is as follows: "The governor, auditor, secretary of state, state treasurer, and attorney general of the state shall constitute the state board of assessment and equalization. Said board of equalization shall hold a session at the seat of government commencing on the first Monday of August of each year. A majority of the members of said board shall constitute a quorum, and have authority to act." The manner of valuing and assessing the property of express and sleeping car companies is provided for by sections 65 and 66, which are as follows: "Every express company and every sleeping car company doing business in this state must transmit to the auditor of the state a statement of its business done within this state for the year ending on the thirtieth day of April preceding, which statement must be furnished on or before the first day of July of each year, and shall contain the following items: First. The total number of employes engaged by such company within the state, and the number thereof in each county. Second. The total number of offices maintained by it within the state and the number thereof in each county; the value of all office furniture, fixtures,

and real estate owned by it within this state.   Third. The number of miles of railroad over which such express or sleeping car company conducts its business within the state and the number of miles thereof in each county.   Fourth. The total number of express cars or sleeping coaches owned by such company and used within this state, and the number of such express or sleeping cars leased and controlled, but not owned by such company, and used within this state or operated under lease or contract in any manner.   Fifth. The gross earnings of the total business of such company transacted within this state for the year ending April 30th preceding, and the value of all the property of such company used in this state.   Section 66.   If the statement aforesaid shall not be received by the said auditor by the first day of August of each year, he shall thereupon proceed to obtain the facts and information aforesaid in any manner that may appear most likely to secure the same correctly.   Said property shall be assessed by the state board of assessment and equalization, and not otherwise. Said board shall value and assess said property as of the first day of May of said year, and in assessing said property shall take into consideration the gross earnings of said company within the state for the year ending on the 30th day of April preceding, and any and all other matters necessary to enable them to make a just and equitable assessment of said property, in the same ratio as the property of individuals.   The statements so filed or the information so obtained shall be laid before the state board of assessment and equalization, which board shall review said statement or information, and may change the valuation given or add to said statement any property omitted therefrom, and said board shall levy a tax on said property, which tax shall be equal to the average assessment of state, county, school, and municipal taxes levied upon other property for the preceding year, and the auditor shall notify each company of the amount of taxes so levied."

By the statement transmitted to the state board by the relator it appears that the relator had 129 express offices, transacted its business over 1,603 miles of railroad, received as gross earnings the sum of $20,480.64, and had property, real and personal, of the value as therein stated of $8,956.80 within this state.   The ques-

tion therefore presented for decision is, did the state board of assessment and equalization exceed its jurisdiction in valuing and assessing the property of relator at $35,000? or did it fail to regularly pursue its authority? It will be observed by an examination of the statute relating to the assessment of express companies that the duties of the state board of assessment and equalization in assessing the property of relator are not those of an equalizing board, but are those of an original assessing board vested with full power to value and assess the property of such company at such sum as they shall deem just and equitable, and that no power is expressly conferred upon any other board or upon any court to review their assessment. It will be further observed that by the provisions of the statute, notwithstanding the relator is required to transmit to the state auditor a statement containing certain facts, among which is "the value of all office furniture, fixtures, and real estate owned by it within the state," no special legal effect is given to such statement. It is true the statement transmitted to the state auditor, or information obtained otherwise, if no statement is transmitted, is required to be laid before the board for review, and from it and all other matters necessary to enable the board to make a just and equitable assessment, including the gross earnings of the relator, it "shall value and assess said property," but the valuation and assessment must be made by the board itself. The learned counsel for the relator does not, as we understand his brief, controvert the fact that the state board of assessment and equalization had jurisdiction over the subject-matter and of the party, and was vested with the power to "value and assess" the property of the relator. But he contends that in the exercise of the power the board did not regularly pursue the authority with which 'it was clothed, and thereby exceeded its jurisdiction and rendered its assessment void. The learned counsel for the relator contends that the state board of assessment and equalization is a creature of the statute; that its authority for its action and the manner of its procedure are determined and regulated by the statute; and that it is well-settled law that such body must strictly follow and comply with the statutory regulations creating and defining its authority, and any

deviation from such statutory regulations is in excess of its juris-
diction, rendering such act void. These propositions are sub-
stantially correct, and are not controverted by the learned attor-
ney general. But the learned counsel states another proposition
upon which his argument is largely based, to which we cannot
assent without a material qualification, and that is "that the
power of the court is clear upon the return of the writ, and after
an examination of the merits, if an erroneous or excessive assess-
ment has been made, to alter, reduce, or annul the same." This
court, under the provisions of our statute governing it in proceed-
ings on *certiorari*, is not vested with the power to examine the
case on "the merits," and if the assessment is found "excessive"
to alter, reduce, or annul the same. This court is authorized to
grant the writ only when inferior courts, officers, boards, or tribu-
nals have exceeded their jurisdiction, (section 5507, Comp. Laws;)
and "the review upon this writ cannot be extended further than
to determine whether the inferior court, tribunal, board, or officer
has regularly pursued the authority of such court, tribunal, board,
or officer." Section 5513, Comp. Laws. The writ is confined to
questions touching the jurisdiction of the subordinate courts, offi-
cers, boards, or tribunals, and the regularity of their proceedings.
In other words, when such courts, officers, boards or tribunals have
jurisdiction of the subject-matter and of the party, their action
will be sustained unless in their proceedings they do some act for-
bidden by law or neglect to do some act required by law; or, as
stated by Judge Cooley, "when the assessment is erroneous in
point of law, either because the assessors have adopted some in-
admissible basis in making it, or because they have disregarded
any of the mandatory provisions of the statute on which parties
assessed have a right to rely," *certiorari* will lie to correct the pro-
ceedings. Cooley, Tax'n, p. 758; People v. Ogdensburgh, 48 N. Y.
390; Owners of Grounds v. Mayor, 15 Wend. 374.

We think the proper rule governing courts on writs of *certiorari*
is clearly laid down by the court of appeals of the state of New
York, in the case of People v. Odgensburgh, *supra*. In speaking
of the powers and duties of assessors the court says: "By this
statute the assessors are not bound by the oath taken before them.

They are required to hear the proofs, and then to fix the value 'at such sum as they may deem just.' Where the property is visible, the assessors are supposed to have viewed it. If an oath should be made before them that certain land assessed is worth but $50 per acre, they may still, if they think it worth so much, assess it at $100 per acre; or if an oath should be made that personal property is worth only $1,000, they may still assess it at $3,000. The statute makes them the judges of the value of property for the purposes of taxation. They are required to exercise their judgment as to its value, notwithstanding any proof that may be produced before them, and the case would have to be a very extraordinary one which would authorize the supreme court upon *certiorari* to review their judgment. Indeed, it would be quite impracticable in most cases for the supreme court upon *certiorari* to correct the judgment of the assessors as to values, and my attention has been called to no case where it has been done. If, however, the assessors place upon the assessment roll property not liable to taxation, and they refuse, upon the application of the person aggrieved, to strike it off, then their action can be reviewed by *certiorari;* as, if they assess personal property which has its *situs* in another state, (Hoyt v. Commissioners, 23 N. Y. 224; People v. Gardner, 51 Barb. 352,) or which is exempt from taxation by the laws of this state or of the United States." The theory upon which the argument of the learned counsel for the relator seems to be mainly based is that the valuation of the property fixed in the statement transmitted to the state auditor is to be taken as the true value. In this we think the counsel cannot be sustained. He seems to overlook the great and controlling fact that the value is to be fixed by the state board, and that the value as fixed in the statement has given to it, by the statute, no more weight in the determination of its value by the board than other matters that may be taken into consideration. If the law had provided that the statement, when made, should be conclusive, or even *prima facie* evidence of the facts stated therein, or had the value as fixed in the statement been given some definite, legal effect, to be overcome by a certain class of evidence, and the board had disregarded the provisions of the statute that were mandatory

in making its assessment, this court might in this proceeding grant the relator the proper relief.   To illustrate, had the statute made the statement of the express company to the auditor conclusive as to the value of its property, and the board had increased its value, the act would be set aside by this court as being in excess of its authority; or, if such value as stated could only be changed upon the proof of certain facts, the omission to take proof of those facts would render the action of the board invalid, because it had failed to regularly pursue its authority.   Its authority to do the act being limited and defined, it must be strictly pursued.   But where, as in the case at bar, the power is by law conferred, and the duty is imposed upon the state board of assessment and equalization to "value and assess" the property of the relator, and the law provides that, in assessing said property, the board shall take into consideration the gross earnings of said company, and "any and all other matters necessary to enable them to make a just and equitable assessment of said property in the same ratio as the property of individuals," and it appears the board has taken into consideration such gross earnings and other matters, the value fixed by the board is, we think, conclusive upon this court.

It is insisted that the board had no right to take into consideration the contracts of relator with the railroad companies in fixing the value of the property and making its assessment.   What provision of the law prohibits the board from taking such contracts into consideration?   We have not been able to discover any; but on the other hand, we find that the board is authorized to take into consideration "any and all matters" that will enable them to make a just and equitable assessment.   The law has placed no limitation upon the board as to the matters they shall take into consideration, and we certainly can impose none.   Again, it is contended that the board fixed the value of the relator's property at $35,000, without changing the valuation of such property as transmitted to the state auditor; but when the board was authorized to value and assess the relator's property, its value and assessment is the only one made, and, when made, if the value and assessment exceed that of the value placed upon the property by the relator, it necessarily changes the value placed upon the prop-

erty by relator, and this change the state board is authorized to make. The counsel for relator also insists that the state board is limited in its powers by the provision in the statute that its assessment must be just and equitable, and in the same ratio as the property of individuals, and that this court possesses the power to keep such board within the limits of the authority conferred. But the law has imposed the duty of determining what is a just and equitable assessment upon the state board of assessment and equalization, and has not conferred upon this court the power to review and revise the judgment of the state board upon that question. This court cannot substitute its own judgment for that of the board of assessment and equalization as to what is the assessable value of relator's property, in these proceedings. By its assessment the board has affirmed that the true value of the property of relator is $35,000. In fixing its value the board had before it such evidence as the law required, and its decision is binding and conclusive upon this court in this proceeding. Land Co. v. Gowen, 48 Fed. Rep. 771. But assuming that this court could review the valuation and assessment of the state board of assessment and equalization, and, if it found the assessment excessive, could reduce it, what is there in the record before us that would warrant this court in saying that the value and assessment of relator's property are not just and reasonable, and in the ratio of individual assessments? The counsel's reply to this is that the statement made by the relator and transmitted to the state auditor shows the true value of the property, and that, as the value fixed by the state board greatly exceeds the value so fixed by the relator, it must necessarily be excessive. We think the position is untenable. The value fixed in the statement is, as we have seen, given no legal effect, or made by the law evidence of its value. The value as fixed by the relator may, like other matters before the board, be considered in determining the value of the property, but is given no greater weight than the other matters considered. It is the board that shall "value and assess" the property, and not the express company. Upon the board devolves the duty of taking "into consideration the gross earnings of said company, * * * and any and all other matters neces-

sary to enable it to make a just and equitable assessment of the relator's property." The value and assessment, therefore, made by the state board must, we think, be conclusive, in this proceeding, on this court, and must be regarded as the just and equitable value for the purposes of taxation. If the decision of the state board was not to be final upon the question of value, why was there given to it such extensive powers in the matters it could consider in determining its value and assessing the property? This large discretion as to the matters it could consider in making such assessment would seem to have been given for the purpose of aiding said board in arriving at a just and equitable assessment, and this we must presume the state board has made.

We have examined the cases mainly relied on by the counsel for relator in support of his proposition that this court can examine the merits of the assessment on this writ, and, if found excessive, reduce or modify it, but we do not think these cases, upon a careful examination, announce a doctrine inconsistent with the views herein expressed. In People v. Ferguson, 38 N. Y. 89, the question was whether or not the assessment was legal or authorized by law. It was held that the assessor adopted the wrong rule in assessing the property, and a rule the statute did not authorize. The law required the stock of moneyed corporations to be assessed "at its actual value." The assessor assessed it at its nominal capital. The relator's capital stock assessed at its actual value was, after deducting exempt property, held by the corporation of no value; and hence not assessable; but assessed at its nominal capital, it would appear to be of the value of $40,000. The assessment was held void and beyond the assessor's jurisdiction, and stricken out by the court. In the case of People v. Assessors of Albany, 40 N. Y. 154, the board of assessors refused to strike certain assessments from the roll or reduce the assessment, upon an affidavit filed, for the reason that the affidavit did not state sufficient grounds to authorize and require such action by the board. The court of appeals of New York held that the affidavit did disclose sufficient grounds to authorize and require the board to reduce the assessment from $500,000 to $5,000, and that the affidavit, stating sufficient legal grounds for the deduction,

the board in refusing to make the reduction, exceeded its jurisdiction. The form of the proof of the facts which entitled the relator to the deduction was not questioned. The affidavit, however, was rejected, not because it was not proper in form, but because the facts stated did not entitle the relator to any deduction, or, in the language of the board in their return, "gave no good reason in law for striking the assessment off the roll, and said application was accordingly refused." It seems to us clear that when the board refused to allow a deduction provided for by statute, and which the relator was by law entitled to, the board exceeded its jurisdiction, and that the court was fully authorized to set aside the action of the board in making the assessment, and reducing it to the legal sum the law authorized the assessors to assess the relator.

The counsel further contends that the act under which the assessment of the relator was made is broad enough to enable the state board of assessment and equalization to take into consideration the gross earnings of the relator from the contracts which relator had with the various railroad companies, extending to points without the state, and therefore is unconstitutional and an invasion of the right of interstate commerce, which belongs to the jurisdiction of the national and not of the state legislature, and the acts of the board, in so far as it undertakes in any way to tax directly or indirectly the property of relator, are absolutely void. The learned attorney general insists that the power to tax the property of relator within this state does not interfere with interstate commerce, but is the exercise of a power on the part of the state that it has never surrendered to the federal government, although in fixing its value the state board may have taken into consideration its gross earnings from the contracts referred to. In this contention we agree with the attorney general. The taxing power of the state is one of its attributes of sovereignty, and this power reaches all property within the state which is not denominated means of the general government, and may be exercised at the discretion of the state. Whatever exists in the state in the form of property within the limits of the state, real or personal, with the exception stated, is subject to its laws. Nathan v. Lou-

isiana, 8 How. 73. The tax imposed by the law in controversy, in the case at bar, is not imposed upon its contracts with the railroads, but upon its property, real and personal, within the state. As one of the means of ascertaining the value of such property, its earning power within the state is taken into consideration. We think no case cited by counsel for relator has gone to the extent of holding that the property of persons or corporations used in the business of interstate commerce is not subject to taxation. The supreme court of the United States has held that a ship engaged in foreign commerce is taxable in its home port, where its owners have their domicile. Hays v. Pacific M. S. Co., 17 How. 596; St. Louis v. Ferry Co., 11 Wall. 423; Ferry Co. v. Penn, 114 U. S. 196, 5 Sup. Ct. Rep. 826. It has held railroads liable to taxation within the state, though they extended into other states. State Railroad Tax Cases, 92 U. S. 575; Marye v. Raliroad Co., 127 U. S. 117, 8 Sup. Ct. Rep. 1037. It has held that the capital stock of telegraph companies may be taxed, as well as its tangible property within the state. Telegraph Co. v. Attorney General, 125 U. S. 530-532, 8 Sup. Ct. Rep. 961. It has also held that the capital stock of sleeping car companies may be taxed by the state through which its sleeping cars pass and repass. Pullman Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. Rep. 876. And that express companies are subject to taxation on express business transacted within the state. Express Co. v. Seibert, 12 Sup. Ct. Rep. 250, (decided in January, 1892.) In Pullman Palace Car Co. v. Pennsylvania, *supra*, Mr. Justice GRAY states the distinction between the two classes of cases that apparently conflict. He says: "Much reliance is also placed by the plaintiff in error upon the cases in which this court has decided that citizens or corporations of one state cannot be taxed by another state for a license or privilege to carry on interstate or foreign commerce within its limits. But in each of those cases the tax was not upon the property employed in the business, but upon the right to carry on the business at all, and was therefore held to impose a direct burden upon the commerce itself." The tax in the case at bar was levied upon the property itself, and the gross earnings the board of assessment and equalization was authorized to take into considera-

tion "were the gross earnings of the total business of such company transacted within the state." And by a fair construction the contracts with the railroad companies considered by the board were contracts with railroad companies within the state; but if not so, we do not deem the fact that, in considering any and all matters necessary to enable the state board to make a just and equitable assessment, it considered these contracts material in this case. As before stated, the state board was not limited as to the evidence or matters it should consider in arriving at the valuation. As the state board of assessment and equalization had jurisdiction of the subject-matter and of the party, and has regularly pursued its authority, its action, so far as this proceeding is concerned, must be in all things affirmed, and it is so ordered. All the judges concur.