[Civ. No. 25862. First Dist., Div. One. May 27, 1969.]

THE PEOPLE ex rel. JANET A. THAIN, Plaintiff and Appellant, v. CITY OF PALO ALTO, Defendant and Respondent.

Thomas C. Lynch, Attorney General, E. Clement Shute, Jr., Deputy Attorney General, Atkinson, Farasyn & Smith and L. M. Farasyn for Plaintiff and Appellant.

James A. Hildebrand, City Attorney, Peter G. Stone, and Robert Keith Booth, Jr., Assistant City Attorneys, for Defendant and Respondent.

ELKINGTON, J.—The People of the State of California, upon the relation of Janet A. Thain, have appealed from a judgment in favor of the City of Palo Alto (City) entered in an action in quo warranto. By the action it was sought, without success, to have the annexation to the City, of property owned by the realtor and others, declared void and of no effect. The annexation proceedings were taken pursuant to Government Code sections 35300-35326 (Annexation of Uninhabited Territory Act of 1939—which we shall refer to as the Annexation Act).

Appellant's contention is that the owners of more than one-half of the value of the territory proposed to be annexed by the City having protested the annexation, the proceedings were, therefore, invalid under Government Code section 35313.

As relevant here section 35313 provides: "At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made:

"(a) If privately owned property and no publicly owned property is proposed to be annexed, further proceedings shall not be taken if protest is made by private owners of one-half of the value of the territory proposed to be annexed. *The value given such property for protest purposes shall be that shown on the last equalized assessment roll* if the property is not exempt from taxation. If the property is exempt from taxation, its value for protest purposes shall be determined by the county assessor in the same amount as he would assess such property if it were not exempt from taxation. . . .

"(c) *As used in this article, 'value of the territory' means the value of land and improvements thereon. . . .*" (Italics added.)

The "last equalized assessment roll," which furnishes the statutory basis for evaluating protests, is defined, as pertinent here, by Revenue and Taxation Code section 109 as follows: "'Roll' means the entire assessment roll. The 'secured roll'

is that part of the roll containing . . . property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure the payment of the taxes. The remainder of the roll is the 'unsecured roll.' . . .''

Traditionally, real property (defined by Rev. & Tax. Code, § 104 as including improvements) has been placed by the assessor on the "secured roll," while personal property (unless sufficiently secured by real property) is carried on the "unsecured roll." (See Rev. & Tax. Code, §§ 109, 134, 2189, 4840.)

The case was tried on stipulated facts. Within the area proposed to be annexed are two parcels of land occupied by tenants of the landowners. Each of the tenants is the owner, by agreement with his landlord, of certain "improvements" on the land. The nature of the "improvements" is not divulged by the stipulation but their assessed valuations are $2,440, and $840. The corresponding "land" assessed valuations are $22,250 and $12,470, respectively. The separate ownership of the "improvements" was made known to the county assessor, apparently pursuant to Revenue and Taxation Code section 2188.2.[1] The "improvements" were then placed on the "unsecured roll" and assessed to their owners, the tenants. In the annexation proceedings the tenants joined in the protests against the annexation. If the assessed value of the tenants' "improvements" is to be included in "the value of the territory proposed to be annexed" the total percentage of protests against the annexation would be 52.19 percent; if not included, the percentage would be 49.94 percent.

As we have noted, by agreement between the landowners and their tenants, the "improvements" on the land were the property of the tenants. ██ Under established law such "improvements," even if buildings or homes, lose their nature as real property and become the *personal property* of the tenants. (See *Teater* v. *Good Hope Dev. Corp.*, 14 Cal.2d 196, 207 [93 P.2d 112]; *R. Barcroft & Sons Co.* v. *Cullen*, 217 Cal. 708, 712-713 [20 P.2d 665]; *Grupp* v. *Margolis*, 153 Cal. App.2d 500, 503 [314 P.2d 820]; *Jordan* v. *Reynolds*, 108 Cal.App.2d-91, 94 [237 P.2d 1005]; *Bowman* v. *Union Trust Co. of San Diego*, 41 Cal.App.2d 397, 402 [106 P.2d 913]; 35 Am.Jur.2d, Fixtures, §§ 16, 79, pp. 713, 762; 41 Am.Jur.2d,

---

[1]Revenue and Taxation Code section 2188.2 states: ''Whenever improvements are owned by a person other than the owner of the land on which they are located, the owner of the improvements or the owner of the land may file with the assessor a written statement before the lien date attesting to their separate ownership, in which event the land and improvements *shall not be assessed to the same assessee.*'' (Italics added.)

Improvements, § 3, pp. 481-482; 32 Words and Phrases (Perm. Ed.) pp. 490-491; 523-525.) [2]

 The first issue presented to the trial court and now to this reviewing court is stated by the parties as substantially follows: Are the personal property "improvements" which appear on the "unsecured roll" properly included in computing "the value of the territory proposed to be annexed" for protest purposes under section 35313?

The trial court determined that such tenant-owned "improvements" should *not* be so included. Although the problem is beset with difficulties, our analysis convinces us that the lower court's conclusion was correct. We hold, that for the purpose of proceedings under the Annexation Act, the Legislature intended that such separately owned and separately assessed "improvements" should be treated as any other personal property, and should not be considered in computing "the value of the territory proposed to be annexed."

On this question, whether the owners of such separately assessed "improvements" on land within "the territory proposed to be annexed" may protest, the language of the Annexation Act, beyond doubt, is uncertain. Government Code section 35310.1, an alternative method of commencing annexation proceedings,[3] provides that if an annexation petition has been filed by the owners of all of the *"land"*[4] in the territory, then no protests may be filed against the annexation by persons owning *"property"* in the territory. An inference may be drawn that in the absence, as here, of unanimity of *land* owners, the owners of separately owned and separately assessed "improvements" may protest. On the other hand the City invites our attention to Government Code section 35311, which requires the city clerk of the annexing city to cause

---

[2]We recognize that Revenue and Taxation Code section 104 defines real property as including "improvements." But it must be kept in mind that we are here dealing primarily with the Annexation Act. The Revenue and Taxation Code is incidental; its provisions being pertinent only as they are used in fixing the "value of the territory." "It is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not." (*Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385, 393 [175 P.2d 512].)

[3]When section 35310.1 is invoked to commence annexation proceedings, the provisions of sections 35311 and 35313 are inapplicable.

[4]The term "land" as used in Government Code sections 35300-35326 means " 'the solid material of the earth' "; its value does not include the value of improvements thereon. (*People* v. *City of Palm Springs*, 51 Cal.2d 38, 44 [331 P.2d 4]; *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App.2d 342, 353 [13 Cal.Rptr. 423].)

written notice of such proposed annexation to be mailed to each person to whom *land* within "the territory proposed to be annexed" is assessed. It is unreasonable, the City states, to suppose that the Legislature intended that owners of separately assessed personal property "improvements" have a right of protest, and yet provided that they need not be given express notice of the proposed annexation. Appellant says it is unreasonable to deny a right of protest to a tenant who may have a far greater stake (perhaps under a 75-year lease) in the proposed annexation than his landlord. The City argues that it would be just as unreasonable to allow a protest to one who in a relatively short time, perhaps at will, may remove his improvements and depart from the area.

The uncertainty of the Annexation Act is in no way dissipated by the provisions of the Revenue and Taxation Code relating to "the last equalized assessment roll." Instead, it seems to be compounded. Revenue and Taxation Code section 608 provides: "Improvements shall be assessed by the assessor by showing their value opposite the description of the parcel of land on which they are located, *if they are assessed to the same assessee.*" (Italics added—the emphasized language was added in 1947.)

Under section 608 separately owned "improvements" are not *required* to be reflected on the "secured roll." When such improvements are not valued on that roll one finds only the *land* description, the *land* owner, and the value of the *land* assessment; no indication being made thereon whether any separately assessed "improvements" stand upon the property. In the search for such "improvements," if any, one must turn to the "unsecured roll." This roll is an alphabetical index of the names and addresses of the unsecured taxpayers within the county, or, as in the case of Santa Clara County, within "areas" into which the county is divided for assessment purposes. Following each name under column headings entitled "improvements" and "personal property and solvent credits" are entries of the assessed value, if any, of such items. Rarely—and obviously so since separately owned "improvements" are the exception—are entries found in the "improvements" column. When there are such entries one finds a dollar amount only; there is no key or reference to the location of the "improvements" or the land upon which they lie. So, unless the assessor devises some cross-index or reference system not required by statute, one cannot determine from the "last equalized assessment roll" whether sep-

arately assessed "improvements" found to be valued thereon, are located within or without the "territory proposed to be annexed."

The paucity of such information is, of course, peculiar to those counties whose assessment rolls are kept within the minimum requirements of law; how many of such counties there are we do not know, but there are at least several.[5] Other assessors have fashioned bookkeeping aids of one kind or another which enable them to more readily find desired information. Given a description of the "territory proposed to be annexed," they are thus enabled to furnish the real property assessed values as shown on the "secured roll" and the value of the related separately owned "improvements" shown on the "unsecured roll." Still others decline to interpret the Annexation Act; they require the city to do so, and furnish the value of the "land and improvements" as shown on either or both rolls, as requested. As to the county with which we are immediately concerned, the parties in the instant case have stipulated: "Where cities in Santa Clara County have requested information with regard to the value of the territory in connection with the preparation of uninhabited annexations, it has been the unvarying practice of the Assessor of Santa Clara County to prepare this information from the secured roll only. No attempt has been made to ascertain whether there might be any improvements not shown on the secured roll. Within the past year alone there have been twelve such requests made by the City of San Jose and the Assessor in every instance worked strictly from the secured roll." It was further stipulated that the two improvements which are the subject of the issue before us "were ascertained by the City, after what the Assistant County Assessor described as a laborious search."

From our consideration of the Annexation Act one of its objects stands out with clarity. In fixing the "value of the territory proposed to be annexed" as that shown on the "last equalized assessment roll," the Legislature intended a *simple, convenient and certain method* for making such a determination. In *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App.2d 342, 355 [13 Cal.Rptr. 423], the court, construing

---

[5]We do not wish to appear critical of California's assessment laws. They may be admirably suited to accomplish their intended purpose—the assessment and collection of taxes. Here, it must be kept in mind, we are dealing with the county assessment roll only as it is a means of fixing the "value of the territory" under the Annexation Act.

the Annexation Act, stated: "There seems no doubt that the Legislature intended, insofar as private property is concerned, that the local council rely solely upon the assessment roll and that the council should not be permitted to 'pierce' the assessment roll and make its independent determination of classification and valuation." The appellate court expressed agreement with the comment of the trial court in that case that going behind the assessment roll "would lead, in annexation cases at least, to untold confusion and, in some instances, to manifestly undesirable results."

It will be assumed that the Legislature, in enacting a statute, has in mind existing related laws (*Estate of Simpson,* 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Buelke* v. *Levenstadt,* 190 Cal. 684, 689 [214 P. 42]; 45 Cal.Jur.2d, Statutes, § 101, p. 815), including, of course, the acts of previous Legislatures. (*Rosenburg* v. *Bump,* 43 Cal.App. 376, 394 [185 P. 218].) Accordingly, in amending Revenue and Taxation Code section 680, in 1947, to permit county assessors to omit all mention of separately assessed "improvements" on the "secured roll," the Legislature will be presumed to have considered its existing Annexation Act provision (Gov. Code, § 35313, first enacted in Stats. 1939, ch. 297, § 6; codified in 1949 without substantial change) fixing the "value of the territory" as that shown on the "last equalized assessment roll." It must also be presumed that the Legislature had in mind that its Revenue and Taxation Code made no provision for the location or description of separately assessed "improvements" to appear on the "unsecured roll."

The Legislature thus had knowledge of the impracticability, perhaps impossibility, of locating separately owned "improvements" on the "unsecured roll" when that roll was kept as provided by law. Yet no effort has been made by the Legislature to cause the *location* of such separately assessed "improvements" to be more readily ascertainable on the assessment roll.

It becomes manifest that in adopting the Annexation Act, the Legislature intended that "the value of the territory proposed to be annexed" be fixed as the value of the *real property* ("land and improvements"—Rev. & Tax. Code, § 104) therein, as disclosed by the last equalized "*secured roll.*" This construction is consonant with "the duty of courts within the framework of the statutes passed by the Legislature, to interpret the statutes so as to make them *workable*

*and reasonable."* (Italics added.) (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.*, 197 Cal.App.2d 759, 763 [18 Cal.Rptr. 151].)

The resolution of additional contentions made by the City has become unnecessary to the determination of this appeal.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.