2003 SD 59

John J. ESLING, Holly Baker, Paul Baker, Gloria Baker, David Meredith, Steinmeyer Farms, Inc. and Save Centennial Valley Association, Appellants,

v.

Jerry KRAMBECK, Mayor of Spearfish, and the Common City Council of the City of Spearfish and the Lawrence County Commission, appellees.

No. 22473.

Supreme Court of South Dakota.

Argued Jan. 14, 2003.

Decided May 21, 2003.

Reed C. Richards of Richards & Richards, Deadwood, South Dakota, Attorney for appellants.

John Fitzgerald, Lawrence County State's Attorney, Bruce Outka, Lawrence County Deputy State's Attorney, Deadwood, South Dakota, Attorneys for appellee Lawrence County.

Lester Nies of Hood, Nies & Dardis, Spearfish, South Dakota, Attorney for appellee Krambeck et al.

KONENKAMP, Justice.

[¶ 1.] In this appeal from a denial of a writ of certiorari, we review the circuit court's ruling that the City of Spearfish lawfully annexed territory under a voluntary petition for annexation. We affirm.

## Background

[¶ 2.] A petition for voluntary annexation under SDCL 9–4–1 was presented to the Spearfish Planning Commission for concurrent annexation and zoning. The property involved is locally known as "Centennial Valley." It includes the county airport, a few small ranches, the Daryll Propp land (formerly the Frawley Ranch), and the John Esling ranch. The petitioned territory consisted of approximately 2,000 acres and shared a common border with the City of Spearfish. For zoning, the territory was to be designated as an AG Agricultural Conservation District with a Rural Service District tax designation, except the county airport, which was to be zoned for its use.

[¶ 3.] In September 2001, the Lawrence County Commission authorized its chairperson to sign the voluntary annexation petition to include the county owned airport. At the same time, under SDCL 9–4–5, the Lawrence County Commission passed a motion approving the city's annexation of unplatted lands described in the petition. A week later, the Spearfish Planning Commission scheduled a hearing on the voluntary annexation petition, and published a notice of public hearing on the matter. Approximately one month later, the Spearfish Planning Commission held its public hearing. Despite objections to the annexation by the applicants here, the Commission unanimously recommended that the City Council approve the annexation petition. After published notices, the City Council held three public hearings on the voluntary annexation. The following actions were adopted unanimously: Resolution 2001–33 for annexation, Ordinance 904 for zoning, and Ordinance 905 for the rural service district.

[¶ 4.] The City Council found that the total value of the territory subject to voluntary annexation was $1,913,730 and that the owners of $1,435,298 in value signed the annexation petition (89.94%).[1] In cal-

---

1.

| | | |
|---|---|---|
| Lawrence County Airport | 440.00 acres | no assessed value |
| Public hanger structure | | $ 950,000 (insured value) |
| | | |
| Private Airport Lessees | | |
| Daniel P. Custis, Jr. | | $ 23,030 |
| Duane Berke * | | $ 15,940 |
| Rich Krogstad | | $ 15,280 |
| Bill Povandra | | $ 6,190 |
| Ted J. Miller | | $ 108,280 |

culating the total value of the territory, the City of Spearfish included the insured value of the Lawrence County Airport public hanger and the value of the privately owned airport hangers on ground leases.[2]

[¶ 5.] To overturn the annexation, the applicants filed for a writ of certiorari. In its decision, the circuit court subtracted the value of the privately owned airport hangers from the total value, finding that the private owners did not constitute "owners of . . . the . . . territory sought to be annexed."[3] Nevertheless, the court held that the insured value of the public hanger was properly included in the total value of the annexed territory and that the owners of more than three-fourths of the total value had signed the petition. The applicants appeal, asserting the following errors: (1) "The city and county exceeded their authority in accepting the values used in the voluntary annexation petition." (2) "The city exceeded its authority since the annexed area is not contiguous." (3)

"The change of zoning in the annexed area is contrary to the initiated ordinance."

## Standard of Review

[¶ 6.] Our review of certiorari proceedings is limited to whether the challenged court, officer, board, or tribunal had jurisdiction and whether it regularly pursued its authority. *Peters v. Spearfish ETJ Planning Comm'n*, 1997 SD 105, ¶ 6, 567 N.W.2d 880, 883. Certiorari proceedings "cannot be used to examine evidence for the purpose of determining the correctness of a finding. . . ." *Willard v. Civil Service Bd. of Sioux Falls*, 75 S.D. 297, 298, 63 N.W.2d 801, 801 (1954). Construing a statute entails answering a question of law; thus, we review the circuit court's statutory interpretation *de novo*. *Ridley v. Lawrence County Comm'n*, 2000 SD 143, ¶ 5, 619 N.W.2d 254, 257 (citations omitted). The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the

| | | |
|---|---|---|
| Star Aviation | | $ 165,720 |
| Other Real Estate Tracts | | |
| Frawley Ranches, Inc. | 404.77 acres | $ 130,530 |
| William Carlstrom | 154.57 acres | $ 87,830 |
| Richard Carlstrom | | $ 49,220 |
| Uttke Family Limited Pt. | 280.00 acres | $ 185,070 |
| John H. Esling * | 797.24 acres | $ 176,640 |
| Total | | $1,913,730 |
| 75% of Value | | $1,435,298 |
| Value of Petitioners | | $1,721,150 |
| Petitioners Percentage of Value | | 89.94% |

\* Denotes non-petitioner

2. The Lawrence County Airport has improvements located within its boundaries, including privately owned hangers on ground leases and the public hanger building. The annexation petition was signed by owners of the private hangers, which were assessed for tax purposes as real property.

3. We need not review the correctness of the circuit court's decision to exclude the value of the private hangars on leased ground. The total value of the property within the territory without the leased property is $1,595,230. Of that amount, the petitioners accounted for $1,402,650 or 87.93 percent of the total value. Thus, the required value was well over the statutory minimum amount of not less than three-fourths of the total value of the territory seeking annexation.

statute. *City of Rapid City v. Anderson,* 2000 SD 77, ¶ 7, 612 N.W.2d 289, 291–92 (citations omitted). The intent of a statute is determined from what the Legislature said, rather than what we think it should have said. *Id.* Words and phrases in a statute must be given their plain meaning and effect. *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citations omitted). In interpreting statutes, we presume that the Legislature did not intend an absurd result. *Id.* We review a trial court's findings of fact under the clearly erroneous standard and its conclusions of law under the *de novo* standard. *City of Marion v. Rapp,* 2002 SD 146, ¶ 5, 655 N.W.2d 88, 90.

## Analysis and Decision

### 1. Value of the Territory

[¶ 7.] The applicants first contend that the circuit court erred in declaring it proper for the city to use the insured value of the public hanger. To address this argument, we review the language of SDCL 9–4–1. Voluntary annexation under that statute requires that the petition must be signed: (1) by not less than three-fourths of the registered voters, and (2) by the owners of not less than three-fourths of the value of the territory sought to be annexed.[4] SDCL 9–4–1. The applicants do not challenge the first element.[5] Rather, they dispute whether the second requirement was met, regarding the "value of the territory." They insist that the term "value" in SDCL 9–4–1 means only the "assessed value" of real property subject to voluntary annexation, and therefore, the circuit court erred when it upheld the city's decision to include the insured value of the public airport hanger in the total value of the annexed territory. On this precise point, the statute is silent.

■■■ [¶ 8.] Accordingly, we must ascertain the meaning of the term "value" as used in SDCL 9–4–1. Statutory wording is given its ordinary meaning, unless it appears from the context that another meaning is intended. *Douville v. Christensen,* 2002 SD 33, ¶ 11, 641 N.W.2d 651, 654. When a statutory term is not defined, we construe it according to its accepted usage. *Spearfish ETJ Planning Comm'n,* 1997 SD 105 at ¶ 13, 567 N.W.2d at 885. The ordinary meaning of the term "value" is "the monetary worth or price of something; the amount of goods, services, or money that something will command in an exchange." Black's Law Dictionary 1549 (7th ed.1999).

[¶ 9.] Several courts have declared that in voluntary annexations the "assessed value" of the property must be used. But those cases all dealt with statutes that included the word "assessed" or some variation of it. *City of Phoenix v. State,* 58 Ariz. 8, 117 P.2d 87 (1941); *Thain v. City of Palo Alto,* 273 Cal.App.2d 400, 78 Cal. Rptr. 240 (1969); *Johnson v. City of Spokane,* 19 Wash.App. 722, 577 P.2d 164

---

4. SDCL 9–4–1 provides in part:

The governing body of a municipality, upon receipt of a written petition describing the boundaries of any territory contiguous to that municipality sought to be annexed to that municipality, may by resolution include such territory or any part thereof within such municipality if the petition is signed by not less than three-fourths of the registered voters and by the owners of not less than three-fourths of the value of the territory sought to be annexed to the municipality.

5. It appears that there are five registered voters, William and Jane Carlstrom, Richard and Gwen Carlstrom, and Steven Meyer, who reside within the territory seeking annexation. All five signed the voluntary petition for annexation. Therefore, well over three-fourths of the registered voters residing in the area seeking annexation signed the petition as required by SDCL 9–4–1.

(1978). In contrast, SDCL 9–4–1 does not expressly state that the "value of the territory" must be the assessed value. If the Legislature had intended to limit "value" to "assessed value," it certainly could have done so. Without specific statutory direction, therefore, we think the question comes down to a matter of reasonableness.

[¶ 10.] With certiorari review limited to the question whether the city had jurisdiction and whether it regularly pursued its authority, we ask, did the city act in excess of its jurisdiction or in an irregular pursuit of its authority? Given the broad scope of the word "value" in SDCL 9–4–1, only an unreasonable application of the statute would constitute an act in excess of jurisdiction. Thus, the city's "action will be sustained unless in [its] proceedings [it] did some act forbidden by law or neglected to do some act required by law." *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979) (citing *State v. State Bd. of Assessment and Equalization*, 3 S.D. 338, 53 N.W. 192 (1892)).

[¶ 11.] First, was it reasonable to include the value of the county owned hanger for purposes of SDCL 9–4–1? We conclude that it was. Lawrence County, as a body politic, has the right to petition the City of Spearfish to include its property within the city limits. After it is determined that the owner of the property in question may properly petition for voluntary annexation, SDCL 9–4–1 directs the city to consider the value of Lawrence County's territory (the airport) seeking annexation.[6] The term "territory," as used in SDCL 9–4–1, is synonymous with the term "area" and the real property within that area. Real property consists of "land; that which is affixed to the land; that which is incidental or appurtenant to land; and that which is immovable by law." SDCL 43–1–3. Accordingly, it was proper for the city to consider the value of the airport land and the value of the airport hanger affixed to the land. *See Johnson*, 19 Wash.App. 722, 577 P.2d 164 (city owned property was included in the valuation for property seeking annexation); *Thain*, 273 Cal.App.2d 400, 401, 78 Cal. Rptr. 240 (" 'value of the territory' means the value of land and improvements thereon").

[¶ 12.] Second, was it reasonable to use the insured value of the county owned hanger? Or, put another way, how should the property value of the Lawrence County Airport be reasonably determined? Again, the statute is silent on how the property should be valued. Given this, any reasonable method of valuation would seem appropriate. Of course, the city could have had the hanger appraised by the county assessor. *See Johnson*, 19 Wash.App. 722, 577 P.2d 164 (even though city's property was exempt from tax, the county assessor could assess the property for valuation purposes). Or it could have had a private appraisal. But nothing in our law mandates a particular type of appraisal in this instance. Absent a showing that the building was underinsured, its insured value reflects the cost of replacement should it be totally destroyed.

[¶ 13.] We conclude that for the purposes of SDCL 9–4–1, the insured value of the hangar was a reasonable valuation. Our scope of review is limited to whether the city had jurisdiction and whether it regularly pursued its authority. *Spearfish ETJ Planning Comm'n*, 1997 SD 105 at ¶ 6, 567 N.W.2d at 883. In our view, the city acted within its authority.

---

**6.** There is no explicit pronouncement in the municipal annexation statutes, SDCL Chapter 9–4, that publicly owned property should be excluded nor is there any such implication.

[¶ 14.] Next, the applicants contend that the city's use of the insured value of the public airport hanger to determine value for purposes of SDCL 9–4–1 violates their constitutional rights. They believe that the two different valuation methods (i.e. the insured value of the public hanger and the assessed value of the real property for tax purposes) used by the city to determine the value of the annexed territory violates their equal protection and due process rights. The valuation of applicant Esling's land included the value of both the land and the improvements as calculated by the county assessor for tax purposes. SDCL 10–6–35.

[¶ 15.] Under traditional equal protection analysis, it is clear from the test in *City of Aberdeen v. Meidinger,* 89 S.D. 412, 415, 233 N.W.2d 331, 333 (1975), that SDCL 9–4–1 does not implicate any legitimacy, gender, suspect classes, or fundamental rights and should be reviewed under the rational basis test. Under the first prong of the *Meidinger* test, SDCL 9–4–1 applies equally to all people. *Lyons v. Lederle Laboratories, A Div. of American Cyanamid Co.,* 440 N.W.2d 769, 771 (S.D. 1989). The statute is inclusive of all petitioners who are owners of property within the annexed territory and uses a single standard: "value." No arbitrary classification exists. Likewise, the second prong of the *Meidinger* test has been met. The method used to ascertain value bears a rational relationship between the classification and some legitimate government interest. The city was presented with a voluntary petition to annex territory it deemed to be contiguous and within the natural path of community growth. Under SDCL 9–4–1, the city was then required to confirm that the petition met the minimum value and voter requirements. In determining "value," the city relied on independent evidence of "value" for the territory

seeking annexation. Clearly, the city's actions bore a rational relationship to a legitimate government purpose. We find no violation of equal protection rights.

[¶ 16.] Although the applicants do not specify whether they suffered a denial of procedural or substantive due process rights, we conclude that neither has been violated. Procedural due process protects certain substantial rights, such as life, liberty, and property, that cannot be deprived except in accord with constitutionally adequate procedures. *Tri County Landfill Ass'n, Inc. v. Brule County,* 2000 SD 148, ¶ 13, 619 N.W.2d 663, 668 (*Tri County II*) (citations omitted). Procedural due process "is flexible and requires only such procedural protections as the particular situation demands." *Id.* (citations omitted).

[¶ 17.] Applicant Esling received a personal letter containing the annexation petitions and his attorney attended the public hearing before the Planning Commission. Likewise, all notices of hearing were duly published, and notice to the applicants was clear, public, timely, and unequivocal. None of the applicants were deprived of life, liberty, or property. Applicant Esling, for example, continues to own his property, which was formerly zoned agricultural and is currently zoned as an AG Agricultural Conservation District within the City of Spearfish and is under a Rural Service District for property tax purposes.

[¶ 18.] Similarly, no substantive due process violation has been shown. "A violation of substantive due process occurs when 'certain types of governmental acts [breach] the Due Process Clause regardless of the procedures used to implement them.'" *Tri County Landfill Ass'n, Inc. v. Brule County,* 2002 SD 32, ¶ 10, 641 N.W.2d 147, 151 (2002) (*Tri*

*County III).* Substantive due process analysis begins with an examination of the "interest allegedly violated." *Id.* at ¶ 13, 641 N.W.2d at 151–52. Under *Tri County III,* the applicants are unable to show that they have a protected property interest in not being annexed. The applicants cannot validly argue that they have been deprived of county zoning jurisdiction, because they have no protected property interest in a particular zoning law. Furthermore, even if applicant Esling had a protected property interest, he has not demonstrated that the city's use of assessed value for his property and insured value for the public hanger was "truly irrational." *Id.* at ¶ 11, ¶ 20, 641 N.W.2d at 151, 153. To sustain a substantive due process claim founded on a zoning dispute, the applicants must show that the "government's action was 'sufficiently outrageous' or 'truly irrational.'" *Id.* at ¶ 11, 641 N.W.2d at 151 (citations omitted). We conclude that Esling and the other applicants were afforded full due process and equal protection under the law.

## 2. Contiguous Territory

[¶ 19.] The applicants contend that the circuit court erred in finding that the territory annexed was "contiguous." Voluntary annexation under SDCL 9–4–1 requires that the territory to be annexed must be "contiguous." The applicants argue that the territory in question is not "contiguous" to the City of Spearfish. This argument fails in both law and fact. To be contiguous, the annexed territory must: (1) be contiguous to the city, (2) encompass a community of interests, and (3) constitute a natural and reasonable inclusion. *Anderson,* 2000 SD 77 at ¶ 10, 612 N.W.2d at 292; *Krebs v. City of Rapid City,* 364 N.W.2d 128, 130 (S.D.1985); *Big Sioux Township v. Streeter,* 272 N.W.2d 924 (S.D.1978).

[¶ 20.] Under the statute, the term "contiguous" includes "territory separated from the municipality by reason of intervening ownership of land used as a golf course or any land owned by the State of South Dakota or any subdivisions thereof." SDCL 9–4–1. Our review of cases in other jurisdictions reveals that "contiguous" has been interpreted to mean "adjacent," "adjoining," or having a "substantial common boundary." *Anderson,* 2000 SD 77 at ¶ 12, 612 N.W.2d at 293 (citations omitted).

[¶ 21.] Here, the annexed property physically adjoins the city. The Lawrence County Airport, land owned by a subdivision of the State of South Dakota, shares a common border with the City of Spearfish. SDCL 9–4–1. Further, the total length of the annexed territory from east to west is more than three miles, and the depth of the territory north to south ranges from one-half mile to one and one-half miles. This fact defeats the applicants' contention that this is the type of annexation commonly referred to as a "corridor," "strip," "shoestring," or a "long lasso," disallowed by a majority of courts, including this Court. *Anderson,* 2000 SD 77 at ¶ 13, 612 N.W.2d at 293 (citations omitted). In sum, we conclude that the territory is contiguous to the city, shares a common border of reasonable length and width, lacks any significant physical barriers or irregular shapes, and has no unjustified narrow corridors, enclaves, or islands of unannexed territory.

[¶ 22.] Next, we consider whether the annexation encompasses a community of interests and is natural and reasonable. The city documented in detail its consideration of the voluntary annexation petition and its finding that the annexation encompassed a community of interests. In addition, the petitioners stated that "we share a common bond and community of interest

with the City of Spearfish and wish to be contributing members of the community."

[¶ 23.] In *Big Sioux Township*, 272 N.W.2d at 926, this Court wrote:

[a] natural and reasonable annexation may result from the following justifications: a need resulting from the orderly growth and development of the municipal corporation; an outflow of benefits including services and facilities to the outlying territory without a corresponding inflow of monetary contribution for such benefits resulting in an uncompensated burden to the municipal corporation; or an expressed need that the outlying territory has for services and facilities that the municipal corporation is able and willing to provide.

*See also Krebs*, 364 N.W.2d at 130–31. Here, the city found that the annexation was natural and reasonable, since it was compatible with Lawrence County's comprehensive plan. Moreover, the annexed territory is within the boundaries of the Spearfish Fire Department fire protection district, Spearfish School District 40–2, and the retail trade and medical service area of the city. The annexation encompasses a *community of interests and is natural and reasonable.*

[¶ 24.] The applicants contend that the annexation improperly excluded a long established residential development located adjacent to the airport property. This argument might be compelling if the city initiated the annexation. But this is a voluntary annexation, and the residents of that development did not seek to be annexed. We conclude that the city did not exceed its jurisdiction and authority in approving the annexation petition. The annexed territory is "contiguous," encompasses a community of interests, and is a natural and reasonable inclusion to the City of Spearfish.

### 3. Zoning

■■■ [¶ 25.] Finally, the applicants contend that the city's change of designation from A–1 Agriculture zoning to an AG Agricultural Conservation District in the annexed area is contrary to the initiated county zoning ordinance. In June 2001, the voters of Lawrence County passed a county zoning ordinance by initiative in response to the proposed Frawley Ranch development. The ordinance recognized that certain portions of the annexed territory have historically been designated as A–1 Agriculture by the Lawrence County Comprehensive Plan and Zoning Ordinance. The initiated ordinance provided that no change in zoning of Centennial Valley be approved or allowed for a period of six years.

[¶ 26.] Under SDCL ch 9–4, a city has the authority to annex contiguous territory. Municipal annexation is subject to approval by the county commissioners if the territory is unplatted, as it was in this case. SDCL 9–4–5. The Lawrence County Commissioners had the authority to approve the annexation. Furthermore, the language of the initiated ordinance did not limit the county commissioners' authority to approve the proposed annexation. A city has comprehensive planning powers within its corporate limits and can also zone all property within three miles of its corporate limits concurrently with the county zoning commission. SDCL ch 11–2 and SDCL ch 11–4; *Lincoln County v. Johnson*, 257 N.W.2d 453 (S.D.1977).

[¶ 27.] Although this Court has never addressed the issue of whether a city may zone territory upon annexation contrary to a county zoning ordinance, other jurisdictions have. These courts have held that once a city annexes a territory, it has exclusive zoning jurisdiction over that territory. *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209, 212

(1968) (county zoning ordinances cease to apply to land annexed to city); *Taylor v. Bowen*, 272 N.C. 726, 158 S.E.2d 837, 839 (N.C.1968) (after annexation county lost jurisdiction to zone); *City of South San Francisco v. Berry*, 120 Cal.App.2d 252, 254, 260 P.2d 1045, 1046 (1953) (same); *Louisville & Jefferson County Planning & Zoning Comm'n v. Fortner*, 243 S.W.2d 492, 494 (Ky.App.1951) (same).

[¶ 28.] Here, then, the initiated county zoning ordinance ceased to apply once the territory was removed from the county's jurisdiction by annexation.[7] For this reason, it matters not whether the city zoned the land as agricultural or as residential. The city properly exercised its authority. In one respect, we disagree with the circuit court that the zoning issue was premature. We hold, instead, that Spearfish has exclusive jurisdiction to zone the annexed territory and that the territory is no longer subject to the initiated county zoning ordinance.

[¶ 29.] Affirmed.

[¶ 30.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶ 31.] SABERS, Justice, dissents.

.SABERS, Justice, (dissenting).

[¶ 32.] I dissent because the actions of the City and County in this case were unreasonable and illegal.

**[¶ 33.] 1. The City and County improperly diluted the value of Esling's property by including the airport property in the valuation.**

[¶ 34.] It is fundamentally unfair to sweep up an unwilling landowner in a "voluntary" annexation by the simple expedient of using the value of county-owned property to dilute the value of the unwilling landowner's property. Esling owns 38% of the total area of the real estate in this annexation. Absent the value assigned to the airport property, Esling's property constitutes 30.5% of the total value of the property.[8] There could not have been a "voluntary" annexation of this land without including the value of the county-owned property because Esling's refusal to sign the petition would have been fatal to the annexation effort. SDCL 9–4–1 provides in part that the petition for voluntary annexation must be signed by "the owners of not less than three fourths of the value of the territory sought to be annexed[.]" It was unreasonable to include the value of the airport property in determining the value of property in the annexation petition. Public property is generally excluded in determining value for annexation. For example, public streets, alleys, parkways and sidewalks are excluded. *See e.g. City and County of Denver v. Holmes*, 156 Colo. 586, 400 P.2d 901, 902–3 (1965). The County has the right to petition for annexation, but it should not have the right to do

---

7. A review of the record reveals that the City of Spearfish immediately zoned the territory upon annexation.

8. The amount and value of the properties involved are:

| Lawrence County Airport: | | |
|---|---|---|
| 440 Acres | No assessed value | |
| Hangar: | Appraised Value: | $950,000 |
| Real Estate | | |
| Frawley Ranches, Inc: | 404.77 acres | $130,530 |
| Carlstrom: | 154.57 acres | $ 87,830 |
| Uttke Family LP: | 280 acres | $185,070 |
| Esling: | 797.24 acres | $176,640. |

so at the expense of surrounding landowners. It is not the County that will be liable for municipal taxation, it is Esling and the value of his property should not be diluted for annexation purposes by the entity which will not bear the burden of annexation.

[¶ 35.] **2. The annexed property was not a natural or reasonable inclusion and therefore is only artificially contiguous.**

[¶ 36.] The land annexed to the City is not a natural or reasonable inclusion and therefore is only artificially contiguous. In support of its determination that the annexation was a natural and reasonable inclusion, the majority opinion states "the City found that the annexation was natural and reasonable, since it was compatible with Lawrence County's comprehensive plan." This finding by the City is simply untrue. The annexation led to rezoning of the area in direct contravention of the initiated ordinance which prohibited such zoning changes. Furthermore, the annexation excluded the residential subdivision which is adjacent to the airport property and extends in a strip into the annexed property. See Exhibit A attached hereto as Voluntary Annexation Map.

[¶ 37.] This annexation meets none of the criteria cited by the majority opinion from *Big Sioux Township* to determine whether the annexation is reasonable and natural. 272 N.W.2d 924 (S.D.1978).

[¶ 38.] First, it does not result from orderly growth of the city because orderly growth does not have an unannexed strip in the middle. See exhibit A, Voluntary Annexation Map attached hereto. This Court reversed a similar annexation attempt in *City of Rapid City v. Anderson*, 2000 SD 77, 612 N.W.2d 289, where the city attempted to annex a narrow strip of land in order to annex the airport property.

[¶ 39.] Second, there is no "outflow of services" to the annexed properties to justify the need for a corresponding inflow of compensation. In fact, by not annexing the subdivision adjacent to the airport, the city received the benefits of annexing the other property without the burden of providing services.

[¶ 40.] Third, there is no expressed need for services for this annexed territory. Finally, if the City was willing and able to provide services and facilities for this annexation, the developed subdivision should have been included in the annexation.

[¶ 41.] Simply stated, the City, County and developer wanted the Propp land to be annexed. With this ultimate goal in mind, they annexed only the property necessary to make the Propp land physically contiguous to the City. This is not a reasonable or natural extension, it is merely a legal ploy to get what the developer, City and County could not get from the voters; rezoning of the land around Exit 17 so that it could be developed in a piecemeal fashion.

[¶ 42.] **3. The County acted unreasonably in ignoring the initiated ordinance.**

[¶ 43.] The County's blatant disregard of the voter's initiated ordinance was unreasonable. Propp and the city of Spearfish have been battling for years to change the zoning around Exit 17 for the purpose of piecemeal development of this property. The voters of Lawrence County have consistently and legally thwarted those efforts. The last attempt by the voters of the County to make their will known was the initiated ordinance of June 2001 which provided in part:

[w]hereas this Lawrence County Comprehensive Plan has areas that have been designated as A–1 agriculture in compliance with the Compre-

hensive Plan and Zoning Ordinances that require A–1 agriculture zones be maintained to allow suitable areas of Lawrence County to be retained in agricultural uses,[and] *to prevent scattered non-farm development* ... [b]e it ordained that no change of zoning ... be approved or allowed for a period of six years from the date of the adoption of this ordinance.

(emphasis supplied). There is no question that the language in this ordinance is directly aimed at development of the property surrounding Exit 17. Now the City, County and developer have simply found an improper way to get around the will of the voters in this County. We have held that when a County Commission disregards the clear intent of a comprehensive plan it exceeds its authority. *See e.g. Save Centennial Valley Association Inc. v. Schultz,* 284 N.W.2d 452, 457 (S.D.1979). Given the history of the City and the developer, the County was aware that the City's first step would be to change the zoning of this area. By signing the voluntary annexation petition, the Commission disregarded the desire of its constituents and exceeded its authority. This behind the scenes end run was overreaching, unreasonable and illegal and should not be sanctioned by this Court.

[¶ 44.] We should order the circuit court to vacate this annexation.