AMERICAN PHONE INCORPORATION d/b/a Phone American of South Dakota, Plaintiff and Appellee,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, Defendant and Appellant.

No. 16037.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1988.

Decided March 8, 1989.

David C. Humphrey, Yankton, for plaintiff and appellee.

Mary Vanderpan, Public Utilities Commission, Pierre, for the commission; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Jeremiah D. Murphy, Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, William P. Heaston, Allan L. Grauer of Northwestern Bell Telephone Co. Legal Dept., Omaha, Neb., for defendant and appellant.

STEELE, Circuit Judge.

Pursuant to SDCL 49–13, America Phone Incorporation (Phone America) filed a complaint with the South Dakota Public Utilities Commission (PUC) contending that the amount Northwestern Bell Telephone (Northwestern Bell) billed Phone America for Feature Group A (FGA) service was more than Northwestern Bell originally represented. On appeal the sole issue is whether the PUC had jurisdiction over this complaint. We conclude that the subject of the dispute was intrastate in nature and hold that the PUC properly assumed jurisdiction over the controversy.

Phone America was a reseller of telecommunications service. Northwestern Bell supplies telecommunication lines and related services.

Phone America obtained a switching station in Rapid City, South Dakota. In February 1985 it ordered 72 FGA lines from Northwestern Bell and 18 Wide Area Telecommunications Services (WATS) lines from American Telephone and Telegraph (AT & T), another supplier of telecommunications service. All of the FGA lines were physically located within the state of South Dakota. They were access lines designed to be used to collect incoming calls to the switching station. From there, the calls were either transferred to an intrastate WATS line (for calls terminating in South Dakota) or an interstate WATS line (for calls terminating outside South Dakota).

All 18 WATS lines that Phone America purchased from AT & T were interstate lines. Phone America evidently also purchased four or five intrastate WATS lines at one time, but the record is unclear in this respect. Although under Federal Communications Commission (FCC) tariffs the FGA lines were to be used solely as an access to interstate service, they had two-way capability. Phone America also used FGA lines to complete intrastate calls from the switch as well. Northwestern Bell was aware of this practice. The record reflects that a substantial portion of the telephone communications to and from the Phone America switch were intrastate in nature.

Northwestern Bell's charge for the FGA service was to be a flat rate monthly charge of approximately $315.00 per line. This charge could be reduced by a prorated credit from AT & T. The credit was to be based upon a one WATS line for one FGA line basis for 2500 minutes or more of interstate communications usage. If the credit was applied, the charge for the FGA lines would be reduced to the charge for an ordinary local business line plus a mileage charge.

Northwestern Bell billed the FGA service charge separately. Phone America disputed Northwestern Bell's billing alleging that at the time that the FGA lines were sold, Northwestern Bell's sales representative did not advise Phone America of the mileage charge, or that Phone America could not pick which FGA lines it wanted to prorate, resulting in charges far in excess of what Phone America understood they would be.

Because of these alleged misrepresentations, Phone America filed a complaint with the PUC. Following hearing and a rehearing the PUC adjusted the bill. The decision was appealed to the circuit court. During the pendency of the appeal, Phone America declared bankruptcy and dismissed its appeal. One of the issues on appeal was whether the PUC had jurisdiction over Phone America's complaint. The circuit court held that the PUC did have jurisdiction. We hold that the PUC correctly assumed jurisdiction, and affirm the holding of the circuit court.

Northwestern Bell contends that under the Communications Act of 1934, 47 U.S.C.

§ 151–609 (1982), the FCC is bestowed with exclusive jurisdiction over interstate wire communications. Under this act, common carriers file tariffs relating to interstate communications. Pursuant thereto, Northwestern Bell filed Tariff 52. As a properly filed tariff, it constitutes federal law. *American Telephone and T. Co. v. Florida–Texas Frgt., Inc.*, 357 F.Supp. 977 (S.D.Fla.1973), aff'd, 485 F.2d 1390 (5th Cir.1973).

Tariff 52 limited FGA lines to "use in originating communications from and terminating communications to an Interexchange Carrier's Interstate Service or a customer-provided interstate communications capability." Thus, the FGA lines were designed to collect calls to a switching station. From that point the switching station was to distribute the calls through a WATS line to termination. Under Tariff 52, the prorate credit from AT & T only applied if the FGA service was used to collect interstate telephone calls to be switched to AT & T's interstate WATS lines.

Northwestern Bell argues that the FCC is vested with jurisdiction to hear Phone America's complaint because the FGA lines were designed for and described in the tariff as part of an interstate communications service. We find this argument unpersuasive.

SDCL 49–13–13 authorizes the PUC to hear complaints and to determine whether the practices of any carrier are unjust or unreasonable. Here, the subject of Phone America's complaint was that Northwestern Bell used unjust and unreasonable practices in promoting and selling its FGA service. It is therefore clear that SDCL 49–13–13 vests the PUC with authority to hear the complaint in this case.

The operative question, however, is whether the PUC is precluded from assuming jurisdiction by mandate of the Communications Act of 1934 which creates a dual regulatory structure in respect to wire communications. Interstate communications are governed by the FCC (47 U.S.C. § 151 (1982)), and intrastate communications are regulated by the states (47 U.S.C. § 152(b) (1982)). 47 U.S.C. § 152(b)(1) provides that the states are free to govern "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication[s] ..."

In *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed. 2d 369 (1986) the United States Supreme Court interpreted Sections 151 and 152(b). The court recognized that telephone service cannot, given today's technology and economics, be cleanly divided into interstate and intrastate components. In practice, a telephone plant is used to provide both interstate and intrastate service, and thus some cases may be within the jurisdiction of both state and federal authorities. In determining whether a state may exercise jurisdiction, the question to be addressed is whether assumption of jurisdiction would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Under 47 U.S.C. 152(b), the FCC is deprived of regulatory power over telephone service which, in their nature, are separable from and do not substantially affect the conduct or development of interstate communications. *North Carolina Util. Com'n v. F.C.C.*, 537 F.2d 787 (4th Cir.1976).

In this case, the dispute was not concerning a matter which in any way substantially stood as an obstacle to the objectives of Congress "... to make available, so far as possible, to all people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges ..." 47 U.S.C. § 151. Nor did the dispute substantially affect the conduct or development of interstate communications. Instead, it was a dispute over alleged unjust and unreasonable sales practices involving charges pertaining to FGA lines. Those lines were located solely within the state of South Dakota. Most communications with which Phone America was involved were intrastate communications. The only aspect of this case dealing with interstate communications was the peripheral and incidental involvement of in-

terstate WATS line credits which allegedly were not given.

Northwestern Bell cites *National Ass'n of Regulatory Util. Com'rs v. F.C.C.*, 746 F.2d 1492 (D.C.Cir.1984), as authority for the proposition that intrastate facilities and services used to complete even a single interstate call subject the communication to FCC regulation. In that case, the U.S. Court of Appeals ruled that the FCC had jurisdiction to regulate the resale and sharing of intrastate WATS systems if those systems are used to complete interstate communications. It was clear that the communications sought to be regulated in that case were pervasive in nature and substantially affected the conduct of interstate communications. In interpreting 47 U.S.C. § 152(b), the court looked to the nature of the communications involved in determining whether such communications should be left to state regulation. It is the nature of the communication, and not the physical location of a facility or the description in a tariff, which is determinative.

In looking at the nature of the communications involved in this case, we conclude that the subject of the dispute was intrastate in nature. It did not substantially affect the conduct and development of interstate communications, nor did it in any way interfere with the objectives of Congress in the Communications Act of 1934. For these reasons, we hold that the PUC properly assumed jurisdiction over the controversy.

AFFIRMED.

MORGAN, HENDERSON and SABERS, JJ., and HEEGE, Circuit Judge, concur.

STEELE, Circuit Judge, for WUEST, C.J., disqualified.

HEEGE, Circuit Judge, for MILLER, J., disqualified.