NORTHWESTERN BELL TELEPHONE COMPANY, INC., d/b/a US West Communications, Appellant,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF SOUTH DAKOTA, Appellee,

and

Lightwave Associates, a Joint Venture, and Sully Buttes Telephone Company, Intervenors.

Nos. 16921, 16933.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1990.

Decided March 13, 1991.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, William P. Heaston, Omaha, Neb., for appellant Northwestern Bell.

Richard D. Coit, Pierre, (Roger Tellinghuisen, Atty. Gen., on the brief), for appellee PUC.

Richard J. Helsper, Brookings, Benjamin H. Dickens, Jr., Blooston, Mordkofsky, Jackson & Dickens, Washington, D.C., for intervenor Lightwave Associates.

JOHNSON, Circuit Judge.

US West Communications (USWC) appeals a circuit court judgment affirming the decision of the South Dakota Public Utilities Commission (PUC). PUC ruled that Lightwave Associate's (Lightwave) fiber optic facility is a nonaccess facility which crosses the territory being lawfully occupied and served by another telecommunications company furnishing adequate service; therefore, PUC ruled that the facility is exempt from a public interest determination pursuant to SDCL 49–31–20 and 49–31–21. Lightwave filed a notice of review asserting that PUC lacked jurisdiction. We affirm the circuit court's decision as to jurisdiction. We reverse the circuit court's decision that the facility is exempt from a public interest determination and we remand to PUC for a public interest determination.

## FACTS

This action involves an application by Lightwave, a joint venture between the City of Brookings and Sioux Valley Telephone Cooperative, to build a fiber optic toll facility between the cities of Brookings and Sioux Falls. The facility was built through the local exchange franchise territories of several other companies. The facility terminates in USWC's service territory and is intended to carry only interstate telecommunications traffic to and from American Telephone and Telegraph's (AT & T) point of presence in Sioux Falls. Previously, the telecommunications link between Lightwave and AT & T was provided by USWC.

A brief discussion of the procedural history is necessary. On March 31, 1988, PUC determined that it had jurisdiction over this matter, but did not exert jurisdiction as long as the facility carried only interstate traffic. USWC appealed this decision to circuit court. At the request of both parties, the matter was remanded to PUC for a hearing to determine if PUC had jurisdiction.

On October 18, 1988, PUC determined it had jurisdiction over the facility and ordered an evidentiary hearing to consider whether the facility should be built. The evidentiary hearing was completed on March 15, 1989. By a 2—1 vote, (Commissioner Stofferahn dissenting) PUC decided to allow the facility to be constructed without consideration of the public interest. PUC determined that the facility was a "nonaccess" facility, the facility crossed several service territories including USWC's territory, and, thus was not subject to a public interest determination under SDCL 49–31–20 and 49–31–21. USWC appealed to circuit court. On October 27, 1989, the circuit court affirmed the PUC decision in all respects[1].

USWC now appeals to this court and Lightwave raises an additional issue of whether PUC correctly asserted jurisdiction over the facility.

## SCOPE OF REVIEW

■ SDCL 1–26–37 controls this court's scope of review from decisions of administrative agencies. We review the agency decision in the same manner as the circuit court and there is no presumption that the circuit court's decision is correct. *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (1986). Thus, we determine, after reviewing the entire record, whether the agency's findings of fact are clearly erroneous and whether the law has been correctly applied. *Permann v. South Dakota Dept. of Labor Unempl. Ins. D.*, 411 N.W.2d 113 (1987).

## ISSUE I.

WHETHER PUC ERRED IN ASSERTING JURISDICTION OVER LIGHTWAVE'S PROPOSED FIBER OPTIC FACILITY.

---

1. On March 27, 1990, Commissioner Schoenfelder changed her vote and now sides with Commissioner Stofferahn. Thus, a majority of the Commission believes that the facility is an access facility subject to a public interest determination under SDCL 49–31–20 and 49–31–21. Moreover, PUC makes this claim in its brief and requests this Court to remand this action to PUC for a public interest determination.

■ This court has recently explored the dual regulatory structure of the wire communications industry with respect to the PUC's jurisdiction. In *American Phone v. Northwestern Bell Tel.*, 437 N.W.2d 175, 177 (S.D.1989) the court stated:

> The operative question, however, is whether the PUC is precluded from assuming jurisdiction by mandate of the Communications Act of 1934 which creates a dual regulatory structure in respect to wire communications. Interstate communications are governed by the FCC (47 U.S.C. § 151 (1982)), and intrastate communications are regulated by the states (47 U.S.C. § 152(b) (1982)). 47 U.S.C. § 152(b)(1) provides that the states are free to govern "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication[s] ..."

In *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) the United States Supreme Court interpreted Sections 151 and 152(b). The court recognized that telephone service cannot, given today's technology and economics, be cleanly divided into interstate and intrastate components. In practice, a telephone plant is used to provide both interstate and intrastate service, and thus some cases may be within the jurisdiction of both state and federal authorities. In determining whether a state may exercise jurisdiction, the question to be addressed is whether assumption of jurisdiction would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Under 47 U.S.C. 152(b), the FCC is deprived of regulatory power over telephone service which, in their nature, are separable from and do not substantially affect the conduct or development of interstate communications. *North Carolina Util. Com'n v. F.C.C.*, 537 F.2d 787 (4th Cir.1976).

We conclude that PUC's assertion of jurisdiction in this dispute does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress which are "to make available, so far as possible, to all people of the United States a rapid, efficient, nationwide and worldwide wire and radio communication service with adequate facilities at reasonable charges...." 47 U.S.C. § 151 (1988). Additionally, the assertion of jurisdiction does not substantially affect the conduct or development of interstate communications.

In this case, the fiber optic facility was located entirely within this state. Evidently, Lightwave determined that it was more efficient to build their own facility to connect their customers with AT & T's point of presence than to continue to use USWC's services. All of the communications in question are interstate telephone communications. However, since this dispute concerns only communications until they are connected with the interstate carrier (AT & T) and Lightwave has failed to show how PUC's jurisdiction would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress or how it would substantially affect the conduct or development of interstate communications, the subject in dispute is essentially intrastate in nature.

Furthermore, we determine that Lightwave is a connecting carrier exempted from F.C.C. jurisdiction under 47 U.S.C. § 152(b)(2) which, in part, provides:

> [N]othing in this Act shall be construed to apply or to give Commission jurisdiction with respect to ... (2) any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier ...

Here, Lightwave's only connection with interstate communications is solely through the physical connection with AT & T in Sioux Falls. There are no allegations that Lightwave is controlled directly or indirectly by AT & T. The purpose of this exemption was to exclude "tiny, mostly rural telephone companies from federal regulation." *Comtronics, Inc. v. Puerto Rico Tel. Co.*, 553 F.2d 701, 706 (1st Cir.1977).

We, therefore, affirm the circuit court's decision on the issue of jurisdiction.

## ISSUE II.

### WHETHER THE FACILITY IS EXEMPT FROM A PUBLIC INTEREST DETERMINATION.

Under SDCL 49–31–20 and 49–31–21 [2] a facility is exempt from a public interest determination after a hearing (SDCL 49–31–20) or a public interest determination with or without a hearing (SDCL 49–31–21) if the following elements are established:

2. 49–31–20. **Merger or consolidation between competing telecommunications companies prohibited—Competing facilities in already served areas prohibited—Authority of commission to permit exceptions.** No association, corporation, or individual organized for the purpose of owning, maintaining, or operating telecommunications facilities in this state may consolidate with or hold a controlling interest in the stock or bonds of any telecommunications company owning a competing line, or acquire by purchase or otherwise, competing telecommunications facilities. Nor may such an association, corporation, or individual build or construct telecommunications facilities into or within the territory or community already occupied and served by another telecommunications company as defined by § 49–31–1.

An association, corporation or person may file with the commission an application to consolidate or construct telecommunications facilities in a territory being served by another telecommunications company. If the commission finds after a full investigation, notice and public hearing that the public interest will be benefited by the consolidation or construction, the commission may issue a permit granting the consolidation or construction. If the proposed construction is in the territory assigned to telephone cooperatives organized pursuant to chapters 47–15 to 47–20, inclusive, or municipal telephone systems operated pursuant to chapter 9–41, or independent telephone companies serving less than ten thousand local subscribers, the commission may issue a permit only upon the additional finding that the company operating the existing facility is not furnishing reasonably adequate service and will not furnish reasonably adequate service within a reasonable time. *Nothing in this section prohibits the construction of nonaccess facilities which cross the territory being lawfully occupied and served by another telecommunications company furnishing reasonably adequate service.* (emphasis added.)
49–31–21. **Application for permission to construct or extend facilities—Contents of application—Notification to affected companies—Conditions for allowance of competitive facilities—Rights to construct facilities in service areas unaffected.** Any association, corporation or individual before commencing the construction of a telecommunications facility, or an extension of an existing facility outside its lawful territory, shall first apply to the commission for authority to do so. The application shall have attached thereto a plat or map showing the location of the proposed facility. Upon receipt of the application, the commission shall notify any other telecommunications company which may be affected and permit the filing of comments or objections. The commission may allow, with or without a hearing, competitive facilities if it finds such competition to be in the public interest. If the proposed location of a competitive facility is in the territory assigned to telephone cooperatives organized pursuance to chapters 47–15 to 47–20, inclusive, or municipal telephone systems operated pursuant to chapter 9–41, or independent telephone companies serving less than ten thousand subscribers, the commission may allow the competitive facilities only upon the additional finding that the company operating the existing facility is not furnishing reasonably adequate service and will not furnish reasonably adequate service within a reasonable time. *Nothing in this section prohibits the construction of nonaccess facilities which cross the territory being lawfully occupied and served by another telecommunications company furnishing reasonably adequate service.* Nothing in this section affects construction or extension of facilities within the territory for which a company has the certificate to operate, into contiguous territory which is not receiving similar service, or where a certificated telecommunications company agrees in writing to an attachment of lines to the poles of or to parallel the lines of another certificated telecommunications company. (emphasis added.)

1. The facility is a nonaccess facility; and

2. The facility *crosses* the territory being lawfully occupied and served by another telecommunications company furnishing reasonably adequate service.

The two elements above are conjunctive; hence, both must exist before a public interest determination exemption is established.

In this case, the parties spend a great deal of time in their briefs arguing whether the facility at issue is a nonaccess facility.

Each party spends less time on the issue of whether the facility crosses the territory being lawfully occupied and served by another telecommunications company furnishing reasonably adequate service.

The statutes dealing with telecommunications regulation do not define the term "cross." Additionally, there is no evidence indicating that the word is a term of art with a special meaning to the telecommunications industry. Thus, the court will review the term in its ordinary sense, SDCL 2–14–1 [3], and give the term its plain meaning and effect. *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D. 1987).

The term "cross" is defined as follows: "As a verb it means to pass or extend from one side to the other, as to cross a stream." Black's Law Dictionary 338 (5th ed. 1979). The definition above appears to be the clear plain meaning of the term. This court has recently stated:

> When the language of a statute is clear, certain, and unambiguous, there is no reason for construction, and the court's only function is to declare the meaning of the statute as clearly expressed.

*AT & T, supra,* 405 N.W.2d at 27.

The meaning of the statute is this: to meet the public interest determination exemption the facility must extend from one side of a territory being lawfully occupied and served by another telecommunications company furnishing reasonably adequate service to the other side and be a nonaccess facility. Here, all sides agree that the facility terminates in USWC's territory. It is impossible for an optic fiber line to termi-

nate in and cross a territory simultaneously.

Therefore, PUC's Findings of Fact, numbers 7 and 8, dated April 17, 1989, are clearly erroneous [4]. We reverse the circuit court's decision and hold that the facility does not cross USWC's territory.

Since the facility does not cross USWC's territory both elements of SDCL 49–31–20 and 21's public interest determination exemption cannot be established. Thus, we remand this case for a public interest determination pursuant to SDCL 49–31–20 or SDCL 49–31–21 depending upon further findings of the PUC.

MILLER, C.J., HENDERSON and SABERS, JJ., and MORGAN, Retired Justice, concur.

JOHNSON, Circuit Judge, for WUEST, J., disqualified.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

3. 2–14–1. **Words used in ordinary sense.** Words used are to be understood in their ordinary sense except also that words defined or explained in § 2–14–2 are to be understood as thus defined or explained.

4. PUC's Findings of Fact 7 and 8—April 17, 1989:
   7. That the proposed facility will be constructed from the certificated territory of the City of Brookings through the Interstate Telecommunications Cooperative territory and will then cross the certificated area of Sioux Valley Telephone Company into Dell Rapids where it will interconnect with the telephone exchange facilities of Sioux Valley Telephone Company in Dell Rapids and then will proceed through the certificated service territory of the Baltic service area and then will proceed through the certificated area of the NWB to the point of presence of AT & T.
   8. The proposed fiber optic cable will not access the local subscribers or switching facilities of any companies whose service area is crossed by the proposed facility other than the participants and specifically said facility will not access any customers of NWB.