#24448-a-JKK
**2007 SD 104**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

IN THE MATTER OF THE PETITION OF
MONTANA-DAKOTA UTILITIES CO. FOR
APPROVAL TO PROVIDE ELECTRICAL
SERVICE FOR THE NEW NORTH CENTRAL
FARMERS ELEVATOR TO BE LOCATED
NEAR BOWDLE, SOUTH DAKOTA.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

DAVID A. GERDES of
May, Adam, Gerdes & Thompson                Attorneys for appellant
Pierre, South Dakota                        Montana-Dakota Utilities.

JOHN J. SMITH
Assistant Attorney General
South Dakota Public Utilities Commission    Attorneys for appellee South
Pierre, South Dakota                        Dakota Public Utilities Comm.

ROBERT C. RITER, JR.
MARGO D. NORTHRUP
DARLA POLLMAN ROGERS of
Riter, Rogers, Wattier & Brown              Attorneys for appellee FEM
Pierre, South Dakota                        Electric & SD Rural Elec. Assoc.

CARLYLE RICHARDS of
Richards & Oliver                           Attorneys for appellee North
Aberdeen, South Dakota                      Central Farmers Elev.

* * * *

ARGUED ON AUGUST 30, 2007

OPINION FILED **10/17/07**

#24448

KONENKAMP, Justice

[¶1.]        The question we address in this administrative appeal is whether an electric utility may petition to provide service outside its statutorily assigned service territory to a "large load" customer in another utility's assigned service area. We conclude that SDCL 49-34A-56 allows only customers to petition for an outside provider. Thus, we affirm the Public Utilities Commission's ruling that an outside provider lacked standing to bring a petition under the statute.

## Background

[¶2.]        The Public Utilities Commission (PUC) regulates which utility provides a customer with service. SDCL Chapter 49-34A. Under SDCL 49-34A-42, the Legislature allotted each utility an exclusive right to provide service to all new and existing customers within its assigned territory.[1] North Central Farmers Elevator decided to build a new facility in Bowdle, South Dakota. Montana-Dakota Utilities Company (MDU) and FEM Electric Association (FEM) both furnish power to customers in the vicinity, but FEM is statutorily assigned to provide power in the territory where the Bowdle facility would be built. North Central entered into discussions with both MDU and FEM to decide whether it would receive service

---

1.      SDCL 49-34A-42 provides:

Each electric utility has the exclusive right to provide electric service at retail at each and every location where it is serving a customer as of March 21, 1975, and to each and every present and future customer in its assigned service area. No electric utility shall render or extend electric service at retail within the assigned service area of another electric utility unless such other electric utility consents thereto in writing and the agreement is approved by the commission consistent with §49-34A-55.

from the incumbent provider, FEM, or seek permission from the PUC to use the outside provider, MDU. Ultimately, North Central executed a service agreement with FEM.

[¶3.] Disappointed with FEM's choice, MDU brought a petition under SDCL 49-34A-56 seeking to have the PUC assign MDU as the provider for power to the Bowdle facility. Despite the fact that FEM had exclusivity in serving the new facility, MDU asserted in its petition that "regardless of customer preference, MDU is the best suited to provide electric service to North Central under a service contract pursuant to the criteria established by SDCL 49-34A-56[.]" In particular, MDU averred that the Bowdle facility is a large load customer and MDU "is fully able to provide the electrical service requirements of the load to be served." It also alleged that it had an adequate power supply available and would expend fewer dollars than FEM to provide service. According to MDU, it would need only one half mile of additional line, while FEM's line would have to extend for four miles.

[¶4.] FEM, North Central, and the South Dakota Rural Electric Association successfully petitioned to intervene. North Central asserted that MDU's petition was improperly brought because, among other things, it was North Central's preference that FEM provide service. Correlatively, FEM argued that the new Bowdle facility is within its exclusive territory, and it was willing and able to furnish adequate services, and therefore, it should be the provider.

[¶5.] FEM moved for summary disposition, alleging that MDU did not have standing to bring a petition under SDCL 49-34A-56. The PUC granted summary disposition concluding that (1) because the Bowdle facility would be located in

FEM's service territory, FEM had the exclusive right to provide service; and (2) MDU is not a customer, and therefore, it did not have standing under SDCL 49-34A-56 to bring a petition. The circuit court upheld the PUC's decision. MDU now appeals to this Court. The question hinges purely on statutory interpretation: did the Legislature intend to open the competition between utilities for "large load" customers, or did it intend to grant exclusive territories for utilities except when customers seek an outside provider.

## Standard of Review

[¶6.]      We review agency decisions the same as the circuit court; there is no presumption that the circuit court's decision was correct. U.S. West Communications, Inc. v. Public Util. Comm'n, 505 NW2d 115, 122-23 (SD 1993) (citing Northwestern Bell v. Public Util. Comm'n, 467 NW2d 468, 469 (SD 1991)). Neither do we defer "to the interpretation of the trial court, nor to the agency's conclusions of law." *Id*. Questions of statutory interpretation are reviewed de novo. Aspen Storage, Inc. v. Flanagan, 2007 SD 66, ¶9, 737 NW2d 277, 280 (citing Town Square Ltd. P'ship v. Clay County Bd. of Equalization, 2005 SD 99, ¶9 n1, 704 NW2d 896, 899 n1 (citing Fall River County v. S.D. Dep't of Rev., 1999 SD 139, ¶15, 601 NW2d 816, 821 (citations omitted))).

## Analysis and Decision

[¶7.]      In 1975, our Legislature adopted the "South Dakota Territorial Act." This Act gave the PUC the power to establish zones in which utilities would be assigned exclusively to provide service to all new and existing customers in their respective territories. In the case of *In the Matter of Establishing Certain*

*Territorial Elec. Boundaries (Mitchell Area)*, 281 NW2d 65, 70 (SD 1979), we acknowledged that the Act was adopted to avoid duplication of facilities and wasteful spending. Although the Act gave utilities exclusive service areas, it also established limited exceptions whereby a customer might obtain service from an alternative provider. SDCL 49-34A-58; SDCL 49-34A-55; SDCL 49-34A-56.[2] *See also In the Matter of* Northwestern Public Service Co. (Hub City), 1997 SD 35, ¶16, 560 NW2d 925, 928. The exception implicated in this case is found in SDCL 49-34A-56. It provides:

> Notwithstanding the establishment of assigned service areas for electric utilities provided for in §§49-34A-43 and 49-34A-44, new customers at new locations which develop after March 21, 1975, . . . and who require electric service with a contracted minimum demand of two thousand kilowatts or more shall not be obligated to take electric service from the electric utility having the assigned service area where the customer is located if, after notice and hearing, the Public Utilities Commission so determines after consideration of the following factors:
>
> (1) The electric service requirements of the load to be served;
>
> (2) The availability of an adequate power supply;
>
> (3) The development or improvement of the electric system of the utility seeking to provide the electric service, including the economic factors relating thereto;
>
> (4) The proximity of adequate facilities from which electric service of the type required may be delivered;

---

2.  One exception, in SDCL 49-34A-55, allows providers to agree on the sale or exchange of service rights and distribution properties, subject to PUC approval. A different exception, found in SDCL 49-34A-58, allows the PUC to authorize another utility provider to furnish service to a customer when the assigned provider does not rectify its previously determined failure to provide adequate service. Here, MDU claims that SDCL 49-34A-56 grants it an exception.

(5) The preference of the customer;

(6) Any and all pertinent factors affecting the ability of the utility to furnish adequate electric service to fulfill customers' requirements.

*Id.*

[¶8.]    According to MDU, SDCL 49-34A-56 should not be interpreted to allow only a customer to bring a petition for alternative service, as that would defeat the intent of the Act, which is to avoid duplicative and wasteful spending. This statute states that a customer "shall not be obligated to take service from" the assigned provider if the "Commission so determines after consideration" of six factors. SDCL 49-34A-56. One factor is customer preference. *Id.* MDU asserts that because one of the considerations is customer choice, the Legislature did not intend that the customer be the only one allowed to bring a petition. Instead, customer preference is simply a consideration. MDU relies on language from *Willrodt v. Northwestern Public Service Co.*, where we stated that "[a]n individual has no organic, economic, or political right to service by a particular utility merely because he deems it advantageous to himself." 281 NW2d 65, 72 (SD 1979) (quoting Storey v. Mayo, 217 So2d 304, 307-08 (Fla 1968)).

[¶9.]    FEM agrees that the Act was adopted with the intent to avert wasteful spending. It contends, however, that a plain reading of SDCL 49-34A-56 demonstrates that only the customer has standing to bring a petition. Moreover, according to FEM, even though a *customer* does not have an "organic, economic or political right to service by a particular utility," subject to some exceptions, a *utility* does have an "exclusive right" to provide service to a "future customer in its

assigned service area." *See Willrodt*, 281 NW2d at 72 (citation omitted); SDCL 49-34A-42. FEM believes that to allow "a competing electric service provider to petition the [PUC] under SDCL 49-34A-56 forces the customer to engage in a costly regulatory hearing process." It would also, FEM argues, lead to competing providers trying to "cherry pick large customers in another electrical provider's service area," which would render SDCL 49-34A-42 meaningless.

[¶10.]       "The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute." Esling v. Krambeck, 2003 SD 59, ¶6, 663 NW2d 671, 675-76 (citation omitted). When interpreting a statute, we give plain meaning and effect to words and phrases. Hay v. Bd. of Comm'r for Grant County, 2003 SD 117, ¶9, 670 NW2d 376, 379 (citing *Esling*, 2003 SD 59, ¶6, 663 NW2d at 676 (citing Moss v. Guttormson, 1996 SD 76, ¶10, 551 NW2d 14, 17 (citations omitted))). We view the language of the statute as a whole, "'as well as enactments relating to the same subject.'" *Moss*, 1996 SD 76, ¶10, 551 NW2d at 17 (quoting *U.S. West Communications, Inc.*, 505 NW2d at 122-23).

[¶11.]       On careful examination of SDCL 49-34A-56, we interpret this statute to give only customers the right to bring a petition. It is true that nothing in SDCL 49-34A-56 states that the customer is the sole party able to bring a petition. Written in the passive voice, the operative language of the statute leaves unsaid who in particular may bring a petition. Nonetheless, considering the statute's language and the language of its accompanying sections in SDCL Chapter 49-34A, the legislative intent appears to allow only new large load customers at new

locations the right to petition the PUC for relief from the obligation to receive service from the incumbent provider. It is the customer's needs the statute seeks to accommodate: it expresses a concern, not about a provider's interest in gaining business outside its territory, but about a new customer not being "obligated" to accept the assigned provider.

[¶12.] Furthermore, in looking at the preceding section, SDCL 49-34A-55, we see the right of electric utilities to agree among themselves to change assigned service areas, subject to PUC approval, as supporting our reading that SDCL 49-34A-56 was not intended to allow open competition from outside providers for new large load customers. The purpose was to protect the public interest by "the elimination or avoidance of unnecessary duplication of facilities, [the provision of] adequate electric service to all areas and customers affected, and the promotion of the efficient and economical use and development of the electric systems. . . ." *See* SDCL 49-34A-55. Our interpretation reaffirms this Court's earlier statement in *Hub City* that "[t]he plain language of the statute indicates the Legislature intended it to do nothing more than provide a new large load customer at a new location an option to be exercised prior to receipt of service." 1997 SD 35, ¶20, 560 NW2d at 928.

[¶13.] However, simply because the customer prefers an outside provider does not necessarily mean the customer's preference will be granted. The PUC must consider the six statutory factors in SDCL 49-34A-56 before allowing an alternative utility to provide service in another utility's assigned territory. While one factor is customer preference, that cannot be read to suggest that non-

customers may also bring a petition. Rather, without this factor, the PUC might consider itself compelled to ignore a customer's expressed desire when reviewing a petition.

[¶14.] SDCL 49-34A-56 was intended to make peace between competing utilities and protect a new large load customer from costly delays and time-consuming regulatory hearings when the customer prefers service from the local provider. It gives the customer the right to seek service from an outside competing utility, but it cannot be used to force the customer to accept service from an outside provider when the assigned provider is the customer's choice.

[¶15.] Affirmed.

[¶16.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.