BROWN, Circuit Judge.
[¶ 1.] Heartland Consumers Power District (Heartland) appeals from an order and writ of mandamus finding that Jeffrey Ray Heinemeyer (Heinemeyer) was legally qualified to serve on the Heartland Consumers Power District Board of Directors (the Board) and requiring the Board to seat Heinemeyer on the Board. We reverse and remand.
FACTS AND PROCEDURAL HISTORY
[¶ 2.] Heartland is a public corporation and political subdivision of the State of South Dakota, with headquarters in Madison, South Dakota. Heartland is organized pursuant to the Consumers Power District Law, SDCL chs. 49-35 to 49-40, inclusive. Heartland is divided into ten subdivisions and covers a geographic area that stretches across most of the eastern half of South Dakota. Pursuant to SDCL ch. 49-36, Heartland’s directors are elected by the voters of their respective subdivisions and serve a term of six years. Subdivisions 1 through 9 consist exclusively of rural areas and do not include any municipalities. Subdivision 10 of Heartland, however, consists exclusively of the municipalities of Groton, Volga, and Madison, South Dakota.
*774 [¶ 3.] In 2006 two candidates filed for the board position representing Subdivision 10: the incumbent, Anita Lowary, the City Finance Officer of Groton, and Hein-emeyer, the City Finance Officer of Madison. Heinemeyer won the general election on November 7, 2006, receiving sixty percent of the vote for the director position from Subdivision 10.
[¶ 4.] Prior to November 1, 2006, Hein-emeyer had been living in a house that he owned at 927 Jennifer Street in Madison. He sold the home during the fall of 2006 and turned over possession of the home to the buyers on November 1, 2006. On that same day, Heinemeyer moved out of the home on Jennifer Street and began staying at a new home he built east of Lake Madison, on Round Lake, at the address 27 Golf Drive, Wentworth, South Dakota. Heinemeyer’s new home is located in Subdivision 8 of the Heartland Consumers Power District rather than Subdivision 10. Heinemeyer officially closed the sale of his house at 927 Jennifer Street on November 16, 2006.
[¶ 5.] On November 17, 2006, ten days after the election, Heinemeyer began sharing a one-bedroom apartment in downtown Madison, at the address 107 North Egan, Apartment 4, for $75 per month. At that time, the apartment was being rented by an acquaintance of Heinemeyer named Lonnie Lembke. Further, on January 3, 2007, Heinemeyer changed his voter registration, listed his “residence address” as 107 North Egan, Apartment 4 in Madison, and declared that he maintained his home at that address.
[¶ 6.] On December 19, 2006, Heartland’s attorney notified Heinemeyer that the Board did not intend to seat him at their next regular meeting scheduled for January 9, 2007, because Heinemeyer moved his residence from Subdivision 10 to Subdivision 8. On December 28, 2006, Governor M. Michael Rounds executed a Certificate of Election for Heinemeyer declaring he was elected to the office of Heartland Consumers Power District, representing District 10 for a term of six years beginning January 1, 2007. Secretary of State Chris Nelson attested to the certificate. Subsequently, on January 4, 2007, Heinemeyer’s attorney notified Heartland’s attorney by letter of his demand that Heinemeyer be allowed to be sworn in as a member of the board at its January 9, 2007, meeting. At the January 9, 2007, meeting the Board voted unanimously not to seat Heinemeyer as a director of Subdivision 10 because he had moved his residence from Subdivision 10 to Subdivision 8.
[¶ 7.] Heinemeyer filed this action against Heartland in the Third Judicial Circuit claiming he was improperly removed as an elected director of the Heartland Consumers Power District-Subdivision 10. Following a court trial, the court found that Heinemeyer was legally qualified to serve on the Board. It filed an order and writ of mandamus requiring the Board to seat Heinemeyer. Heinemeyer was subsequently seated as a Heartland director in compliance with the order and writ, and Heartland and its individual board members now appeal that ruling to this Court.
[¶ 8.] Heinemeyer filed a motion to dismiss this appeal because the Board did not have a quorum to authorize the appeal. On February 22, 2008, this Court entered an order denying Heinemeyer’s motion to dismiss. In his brief Heinemeyer renews his motion to dismiss this appeal, but does not raise additional grounds for his motion. We find no reason to revisit Heinemeyer’s motion to dismiss and the February 22, 2008, order stands.
*775 STANDARD OF REVIEW
[A] writ of mandamus is an extraordinary remedy that will issue only when the duty to act is clear [.] ” Baker v. Atkinson, 2001 SD 49, ¶ 16, 625 N.W.2d 265, 271. “It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right.” Sorrels v. Queen of Peace Hosp., 1998 SD 12, ¶ 6, 575 N.W.2d 240, 242. To prevail, “the petitioner must have a clear legal right to performance of the specific duty sought to be compelled and the respondent must have a definite legal obligation to perform that duty.” Id. The standard of review for the grant or denial of a writ of mandamus is abuse of discretion. Schafer v. Deuel County Bd. of Comm’rs, 2006 SD 106, ¶ 4, 725 N.W.2d 241, 243.
Woodruff v. Bd. of Com’rs Hand County, 2007 SD 113, ¶ 3, 741 N.W.2d 746, 747. This case, however, is dependent upon the interpretation of statutes. “Statutory interpretation and application are questions of law.” Block v. Drake, 2004 SD 72, ¶ 8, 681 N.W.2d 460, 463 (citing Steinberg v. State Dep’t of Military and Veterans Affairs, 2000 SD 36, ¶ 6, 607 N.W.2d 596, 599). This Court reviews questions of law under the de novo standard with no deference afforded the circuit court’s decision. Id.
ANALYSIS AND DECISION
[¶ 9.] Whether the circuit court erred in ruling that Heinemeyer is a resident of Subdivision 10 of Heartland Consumers Power District, and is therefore legally qualified to serve as a director from that subdivision.
[¶ 10.] The principles of statutory construction are well founded:
‘The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute.’ Esling v. Krambeck, 2003 SD 59, ¶ 6, 663 N.W.2d 671, 675-76 (citation omitted). When interpreting a statute, we give plain meaning and effect to words and phrases. Hay v. Bd. of Comm’rs for Grant County, 2003 SD 117, ¶ 9, 670 N.W.2d 376, 379 (citing Esling, 2003 SD 59, ¶ 6, 663 N.W.2d at 676 (citing Moss v. Guttormson, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citations omitted))). We view the language of the statute as a whole, “ ‘as well as enactments relating to the same subject.’ ” Moss, 1996 SD 76, ¶ 10, 551 N.W.2d at 17 (quoting U.S. West Communications, Inc. v. Public Utilities Com’n of State of S.D., 505 N.W.2d 115, 122-23 (1993)).
In re Montana-Dakota Utilities Co., 2007 SD 104, ¶ 10, 740 N.W.2d 873, 877.
[¶11.] SDCL chs. 49-35 through 49-40, inclusive, govern consumers power districts. SDCL 49-36-11 provides:
No person shall be qualified to hold office as a member of the board of directors of a consumers power district unless he or she shall be a voter of such district or, if such district be subdivided for election purposes as provided in this chapter, of the subdivision of which he or she shall be a voter. No person shall be qualified to be a member of more than one such district board.
(Emphasis added.) In other words, a member of a consumers power district who serves on the board of directors must be a voter of the district. Furthermore, if the district is subdivided, then the member must be a voter of the subdivision which he or she is elected to represent.
[¶ 12.] While SDCL ch. 49-36 does not further define the term “voter,” SDCL 12-4-1 provides that every person who is qualified to register as a voter in *776 South Dakota “shall be entitled to be registered as a voter in the voting precinct in which he resides.” (Emphasis added.) SDCL 12-1-4[1] delineates the criteria for determining voting residence. It provides:
For the purposes of this title, the term, residence, means the place in which a person has fixed his or her habitation and to which the person, whenever absent, intends to return.
A person who has left home and gone into another state or territory or county of this state for a temporary purpose only has not changed his or her residence.
A person is considered to have gained a residence in any county or municipality of this state in which the person actually lives, if the person has no present intention of leaving.
If a person moves to another state, or to any of the other territories, with the intention of making it his or her permanent home, the person thereby loses residence in this state.
(Emphasis added.) In other words, a voting residence is the place in which a person has “fixed his or her habitation” and “whenever absent, intends to return.” Id. Furthermore, a person gains voting residence in the place in which he or she “actually lives” and “has no present intention of leaving.” Id.
[¶ 13.] Finally, SDCL 49-B6-6 provides that “[a] vacancy on the board of directors shall exist in the event of the ... [r]emoval from the subdivision from which the director was elected.” While there is no statutory definition of the term “removal,” the general meaning of the word is “[t]he transfer or moving of a person or thing from one location, position, or residence to another.” Black’s Law Dictionary 1332 (8th ed. 2004); see also Premier Bank, N.A. v. Mahoney, 520 N.W.2d 894, 896 (S.D.1994) (citing Webster’s New World Dictionary of the American Language 506 (rev. ed. 1975)) (“The general meaning of the word ‘removed’ is, ‘to move (something) from where it is; take away or off ... to move away, as to another residence[.]’). Indeed, applying the common definition of removal in this case envisions moving oneself to a different residence.
[¶ 14.] Considering these statutes, in pari materia, we address the uncontro-verted facts of this case. Prior to November 1, 2006, Heinemeyer was living at his home at 927 Jennifer Street in Madison, South Dakota. Since this was the only residence Heinemeyer kept at the time, *777 this was in fact his voting residence. On November 1, 2006, Heinemeyer relinquished possession of his home at 927 Jennifer Street to the purchasers of that home and moved to the new home he built at 27 Golf Drive in Wentworth, South Dakota. On November 1, 2006, Heinemeyer ceased to actually live in his home in Madison. Heinemeyer effectively gained voting residence at his home in Wentworth on November 1, 2006, because he began actually living in his Wentworth home. Thus, on November 1, 2006, Heinemeyer removed himself from District 10 and established his voting residence at 27 Golf Drive in Wentworth.
[¶ 15.] On November 17, 2006, Heinem-eyer began sharing a one-bedroom apartment in downtown Madison, at the address 107 North Egan, Apartment 4, for $75 per month. The question then becomes: did Heinemeyer regain his voting residence in Madison by renting the apartment? The answer is clearly no. Heinemeyer argues that he intended to make his voting residence within the municipality of Madison. However, “[a] person’s declared intentions may be discounted when they conflict with the facts.” State ex rel. Jealous of Him v. Mills, 2001 SD 65, ¶ 10, 627 N.W.2d 790, 793 (citations omitted).
[¶ 16.] Heinemeyer does not actually live in his apartment in Madison. During his testimony, Heinemeyer acknowledged that he does not spend any substantial amount of leisure time at his apartment, keeps few, if any, personal effects at the apartment, and rarely sleeps there overnight. Furthermore, while Heinemeyer testified that he obtained the apartment in order to have a place to eat lunch during the workday and occasionally take naps, he also admitted that he began renting the apartment to satisfy the residency requirement in order to serve on the Board. It is clear that Heinemeyer actually lives in his home in Wentworth and that he has no present intention of leaving.
[¶ 17.] The circuit court found that “[although he built a house on Lake Madison where he currently sleeps, he performs all other activities in Madison and those activities show his intention to keep Madison as his legal voting residence.” (Emphasis added.) In its analysis the circuit court noted several facts that indicate Heinemeyer’s intention to keep Madison his voting residence:
a. voting as a registered voter in Madison for several years;
b. attending church regularly in Madison;
c. maintaining membership on the Chamber of Commerce;
d. volunteering on city and community boards;
e. renting an apartment in Madison;
f. maintaining his mailing address in Madison;
g. using his Madison address as his bank address;
h. receiving newspapers in Madison; and
i. daily employment duties.
[¶ 18.] While these facts certainly establish Heinemeyer’s strong ties and service to the community of Madison, they do little to aid in the evaluation of where he actually lives and whether he has any present intention of leaving. See SDCL 12-1-4. To evaluate Heinemeyer’s voting residence under the guise of where Heinemeyer wants his voting residence to be ignores the clear statutory language of SDCL 12-1-4. The proper question is not where Heinemeyer intends his voting residence to be, but whether Heinemeyer has any present intention of leaving the home in Wentworth, where he actually lives. The record is clear that Heinemeyer has no present intention of leaving his home in *778 Wentworth. To hold otherwise would depart from the clear language the legislature has provided in such circumstances.
[¶ 19.] The fallacy of Heinemeyer’s argument is most easily demonstrated by considering the situation, not entirely unlikely, of an individual who lives and has been a voting resident outside of the municipal limits of a community but went to school in the municipality, goes to church, is employed, serves on the chamber and various community boards and organizations, does his banking, receives his mail and takes his lunch in the municipality. In all respects, such an individual exhibits all of the substantial ties to the municipality shown by Heinemeyer, except being a registered voter of the municipality. If that individual, while maintaining his house outside the municipal limits where he returns in the evenings and keeps his personal belongings, took an efficiency apartment in the municipality as a matter of workday convenience we would have little difficulty in determining that he did not actually live in the municipality for purposes of establishing voter residency.
[¶20.] The Nebraska Supreme Court, on very similar facts, upheld a candidate’s removal from the board of a natural resources district where the candidate changed his residence to an address outside the district, but declared his intention to maintain his voting residence in the district at a home occupied by his aunt and uncle that he intended to purchase at some unspecified future date. Krajicek v. Gale, 267 Neb. 623, 677 N.W.2d 488 (2004). A 1984 South Dakota Attorney General’s opinion came to a similar conclusion. See 1984 SD Op.Atty.Gen. 19 (opining that an individual who has a place of business, within the corporate limits of a municipality, and which place of business has a one-room apartment, may not be permitted to register and vote as though the individual was a resident of that municipality when, in fact, the individual has an ordinarily recognized place of residence outside the corporate limits of said municipality).
[¶ 21.] Heinemeyer has not demonstrated a clear legal right to be seated on the Board. Indeed, because Heinemeyer has not gained voting residence in Subdivision 10, the Board had no existing legal duty to seat Heinemeyer as a director of Heartland and the circuit court abused its discretion by granting the writ of mandamus. Accordingly, the circuit court order granting the writ of mandamus is reversed and remanded for proceedings consistent with this opinion.
[¶ 22.] KONENKAMP and ZINTER, Justices, concur in result.
[¶ 23.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, dissent.
[¶ 24.] BROWN, Circuit Judge, for, SABERS, Justice, disqualified.

. In its memorandum decision, which was incorporated into its findings of fact and conclusions of law, the circuit court noted that "SDCL § 12-1-4 sets forth criteria for determining a voting residence. There is no set definition for 'voting residence’ as it is to be determined by examining all surrounding facts & [sic] circumstances of the case.” (Emphasis in original). By emphasizing the word "criteria” it appears the circuit court intended to minimize the language of SDCL 12-1-4 and, in fact, the remainder of the circuit court’s analysis does not mention or consider SDCL 12-1-4. To the contrary, the plain language of SDCL 12-1-4 provides clear direction to determine a person's voting residence. "When determining legislative intent, 'we assume no part of its statutory scheme be rendered mere surplusage.' ” Huber v. Dept. of Public Safety, 2006 SD 96, ¶ 14, 724 N.W.2d 175, 179 (citing Double Diamond Const. v. Fanners Co-op. Elevator Ass’n of Beresford, 2003 SD 9, ¶ 7, 656 N.W.2d 744, 746). Furthermore, there is no statute in SDCL Title 12 that directs that voting residence is to be determined by all the facts and circumstances surrounding the person. “When interpreting a statute, this Court must seek the true intention from the language used and cannot supply words in the statute." In re Yanni, 2005 SD 59, ¶ 15, 697 N.W.2d 394, 400 (citing Boehrs v. Dewey County, 74 S.D. 75, 79, 48 N.W.2d 831, 833-34 (1951)(emphasis added)). SDCL 12-1-4 provides clear criteria to determine a person's voting residence.